## BOISE CITY IRRIGATION & LAND CO. v. TURNER et al.

(Circuit Court, D. Idaho. July 6, 1905.)

WATERS AND WATER COURSES (§ 254*)—IRRIGATION COMPANIES—VALIDITY OF CONTRACTS.
    Private contracts between an Idaho irrigation company and landowners, granting water rights at fixed prices, made in good faith prior to Act Idaho March 7, 1895 (Acts 1895, p. 174), enacted pursuant to article 15 of the state Constitution, which contracts were valid when made, were not affected by such act or subsequent legislation, and remain valid and enforceable.
    [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 311; Dec. Dig. § 254.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Boise City Irrigation & Land Company against Jane E. Turner and others. On demurrer to bill. Demurrer sustained.

Wood & Wilson, for complainant.

W. E. Borah, for defendants.

BEATTY, District Judge. The complainant is the owner of the irrigating system described in the complaint. While the Central Canal & Land Company owned the system, it sold on September 2, 1889, two water rights, to cover 159.65 acres, which now belong to defendant Ash; that on June 15, 1889, it sold another water right, covering 80 acres of land, and on June 10, 1891, another, covering another 80 acres, both of which rights are now owned by defendant Briggs; that on said last date it sold two other water rights, for 160 acres, which are now owned by defendant Turner; that on May 10, 1892, the Boise City & Nampa Irrigation Land & Lumber Company, which had become the owner of said system, sold 1.6 water rights, covering about 160 acres of land, which rights are now owned by defendant Kampner. Such sales were evidenced by an instrument in writing termed "an indenture and agreement," a copy of which is attached to the brief of complainant's counsel, but is not made a part of the complaint. It is, however, accepted as a correct copy of the instrument of conveyance. The complainant now asks that, in view of the constitutional provisions and the statutes in pursuance thereof, the said sales or contracts be set aside.

The Constitution (article 15) provides, by section 1, that:

"The use of all waters now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, also of all water originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be, sold, rented, or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law."

By section 2:

"The right to collect rates or compensation for the use of water supplied to any county, city, or town, or water district, or the inhabitants thereof, is a franchise and cannot be exercised except by authority of and in the manner prescribed by law."

And by section 6:

"The Legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose."

The Constitution was adopted August 6, 1889, ratified by the people November, 1889, and approved by Congress July 3, 1890 (Act July 3, 1890, c. 656, 26 Stat. 215). The first legislative act in pursuance of the Constitution for the regulation of water rates was March 7, 1895 (Acts 1895, p. 174).

The complainant claims that the disposal of water for irrigation purposes is governed alone by the Constitution and laws, and that all contracts whenever made concerning the same, between the parties, may be held void and subject to the regulations prescribed by law. With-

out further discussion, it may be conceded that, as to all contracts made since the Constitution and laws became operative, such claim is correct; but the defendants maintain that contracts made prior to the enactment of such laws and the Constitution are not controlled thereby and are valid. I can but briefly refer to some of the authorities cited by counsel.

In Lanning v. Osborne (C. C.) 76 Fed. 319, it is held that water must be distributed according to law, and not according to contract between the parties; but it appears that the provisions of the California Constitution relating to this subject were adopted in 1879, and the act of the Legislature in pursuance of the constitutional provisions was enacted March 12, 1885, while it was not until 1887 to 1888 that the contract between the parties was made.

In Boise City Irrigation & Land Co. v. Clark, 131 Fed. 416, 65 C. C. A. 399, the only question before the court was the application of the irrigation company to have annulled an order of the commissioners fixing the maximum rate. There are statements in the decision which tend to support complainant's position, although this question is not directly involved; but it must be noted that the court acted upon the understanding that the "water in question was appropriated by the predecessors in interest of the appellant under and in pursuance of the constitutional and statutory provisions of the state," which statement is in effect repeated, so that the court acted upon the idea that all contracts involved were subsequent to the Constitution and the laws in pursuance of it.

In San Diego Flume Co. v. Southern, 90 Fed. 164, 32 C. C. A. 518, it appears that while the Constitution and laws regulating the use of water were in force, and before any steps had been taken under such laws, a contract was made between the parties. Subsequently a rate was fixed in pursuance of the law. As I understand the ruling, it is that, until a rate is fixed by law, the contract between the parties is valid; but in this case, while a rate had been fixed by law since the contract was made, neither party asked the enforcement of the legally fixed rate, but one party desired the cancellation of the old contract, while the other asked its enforcement, and the court enforced it. It does not directly decide the question involved here.

It appears in Stanislaus County v. San Joaquin Irrigation Co., 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 106, that in 1862 a law was enacted allowing water companies to so charge as to make not less than 18 per cent. on their investment, under which law the company incorporated, built its works, and furnished water until 1896, when the board of supervisors passed an ordinance changing the rate to not less than 6 nor over 18 per cent. The water company asked the annulment of such ordinance, which the court refused, and held that the law under which the company incorporated was subject to amendment, which should bind all parties, and that the company incorporated under this law, did so with notice that it could be amended; but it is variously suggested that a law so framed as not to imply the power of such amendment as to change contracts made under it would protect such contracts.

There are numerous other citations, state and national, bearing upon this subject, which I shall not take time to review. These decisions, as well as other established principles, considered, I conclude that contracts entered into between parties under a valid law become vested interests, which cannot be annulled, unless there is something in the law itself implying that contracts made under it must be controlled or affected by possible changes in the law. It may be said that all laws, regardless of their phraseology, are subject to amendment, and that all who make contracts under them do so with implied notice of such change; but to concede this would be an admission that no contract can be made which cannot be legislated out of existence. This is repugnant to all constitutional law and cannot be tolerated. It is also concluded that when the law itself, through designated officers, fixes the rate, instead of the parties doing it by contract, such rate is subject to change according to a change of the law or action of such officers; also that, even when the law directs how the rate may be fixed by certain officers, until they so fix it, any contract between the parties is valid.

The next question is as to what law was in operation when these contracts here involved were made. They were severally made in September and June, 1889, June, 1891, and May, 1892. The Constitution was adopted by the people in November, 1889, and approved by Congress July 3, 1890. Whether the Constitution went into effect in 1889 or 1890, two of the contracts were prior, and three were subsequent, to that event. But, without discussion of the authorities cited on the question, I do not think that the Constitution on this subject is self-operating, and did not go into effect until the legislative enactment putting it into motion, which was, as stated, in 1895, long after all the contracts were made. I think the contracts were, under the law, valid when made, and so continue, notwithstanding the subsequent Constitution and laws, and that the demurrer should be sustained.

Certainly it may be argued, as it has been, that the enforcement of these contracts is a hardship to the company, as well as to the other water users, who may have to pay a higher rate to make good to the company its losses on them. It is, however, presumed that when these contracts were made the predecessor in interest of this company received some consideration for making them, which is presumed to inure to the benefit of this company. At any rate, it bought with knowledge of them. If it made an improvident contract, it can hardly ask the court to correct that misfortune, which is not alleged to be the result of either fraud or mistake. The only pretext the court can adopt to annul these contracts would be that a change of facts and circumstances has rendered unconscionable what was once fair and reasonable. I would not feel justified in so doing.

The demurrer is sustained.