KEARNEY WATER & ELECTRIC POWERS COMPANY, APPELLEE,.
v. ALFALFA IRRIGATION DISTRICT ET AL., APPELLANTS.*

FILED OCTOBER 30, 1914.  No. 18,355.

1. **Waters: IRRIGATION: APPROPRIATION.** Prior to the irrigation statute
of 1889 (laws 1889, ch. 68), our law provided no method of mak-
ing a claim of appropriation of water except the construction of
works in which to divert the water and diverting the same or
applying it to a beneficial use, and the appropriator was not re-
quired to otherwise declare the amount of his claim until his
right was challenged.

2. ———: **APPROPRIATION.** After the act of 1889 an appropriator ·
whose right was established by the completion of his works for
appropriation, and who ·desired to increase the amount of his.
appropriation, must proceed under that act. The amount of his;
prior appropriation was limited to the capacity of his works as com-
pleted when the act of 1889 took effect and diverting and applying.
the water within a reasonable time.

3. ———: ———: **PRIORITIES: ESTOPPEL.** Subsequent appropriators,
and all persons claiming under them, were bound to take notice
of the rights of prior appropriators which accrued before the act
of 1889. If subsequent appropriators proceeded to construct their
works for the diversion and use of water, prior appropriators
might assume that such works were intended to be subject to their
prior appropriation, and they· would not, by their silence while
subsequent works were being constructed, be estopped to assert
the priority of their appropriation.

4. ———: ———: ———. The act of 1895 (laws 1895, ch. 69)·
required the state board to proceed and determine all appropriations
of water recorded under prior acts, and the act of 1911 (laws
1911, ch. 153) extended that provision to all appropriations
whether or not recorded. An appropriation under the act of 1877
(laws 1877, p. 168) which had not been determined by the board ·
was not affected by adjudications of subsequent appropriations.

5. ———: ———: "REASONABLE TIME." Under the act of 1911, as.
amended in 1913 (Rev. St. 1913, sec. 3412), one who has con-
structed a canal for the purpose of carrying water for hire to be
used upon the lands of others, and is ready and willing to furnish
the water to such landowners as will take it, has made the only
application of water to a beneficial use that he can make, and his.
right to an appropriation continues as a developing right for a

*Opinion modified. See opinion, p. —, post.

reasonable time to enable the landowners to apply it to all lands along the canal for which the water was originally appropriated. What is reasonable time will depend upon the conditions and circumstances of each particular case.

6. ——: ——: ——. This appropriation having been made under the law which permitted appropriations without actually applying it in any specified time, the plaintiff should be regarded as having appropriated water, within the limits of the capacity of its works, for lands under its ditch to which the water was applied within a reasonable time.

7. ——: ——: NOTICE. Appropriations of the water of the state can only be made of water not previously appropriated; and when an appropriation of water has been legally made, and the law at the time fully complied with, subsequent appropriators must take notice thereof. It is not necessary that a prior appropriator should personally notify such subsequent appropriators of his prior rights.

8. ——: ——: VESTED RIGHTS. The act of 1877 (laws 1877, p. 168) made no distinction between the use of water for irrigation and its use for power purposes. Both were equally protected under the act of 1889. Appropriations for power which were completed under the act of 1877 became vested rights and could not be taken for any purpose without compensation.

9. ——: ——: ADJUDICATION. The provision of the act of 1911 (laws 1911, ch. 153, sec. 21) that "no permit to irrigate any land shall be allowed unless the owner or owners of such land shall give consent to the same in proper form" should be applied by the state board when adjudicating appropriations under prior acts; and in this case, begun soon after the act of 1911 took effect, the state board was right in allowing the applicant to obtain and file the consent of the owners of land under the ditch while the proceedings were pending before the board.

10. ——: ——: REGULATION. The use for which water is appropriated must be a reasonable use. The right to use the water so appropriated must be exercised with reference to the general condition of the country and the necessities of the people, and not so as to deprive a whole neighborhood or community of its use without any benefit to any one. The state board will by regulations from time to time allow subsequent appropriators such use of the water as will not substantially deprive the prior appropriator of his beneficial use thereof.

11. ——: ——: ——. The determination by the state board of the amount and priority of an appropriator is without prejudice to such subsequent rules and regulations as will insure a proper use of the rights so determined.

12. ———: ———: Appeal: Evidence. The evidence is found to sustain the findings and decision of the state board.

Appeal from the State Board of Irrigation. *Affirmed.*

*C. C. Flansburg, Beach Coleman, A. W. Lane, G. J. Hunt, Morrow & Morrow, Hazlett & Jack, E. C. Hodder, E. A. Cook, J. G. Beeler* and *Wilcox & Halligan,* for appellants.

*John N. Dryden* and *Warren Pratt, contra.*

Sedgwick, J.

The irrigation act of 1895 (laws 1895, ch. 69, sec. 16) required "the state board at its first meeting to make proper arrangements for beginning the determination of the priorities of right to use the public waters of the state, which determination shall begin on streams most used for irrigation, and be continued as rapidly as practicable until all the claims for appropriation now on record shall have been adjudicated." It seems that the legislature of 1911 amended this section and reenacted the requirement so that the board should proceed with the determination of priorities of rights in the public waters of the state, whether of record or not. Laws 1911, ch. 153, sec. 15.

It does not appear that the rights of the plaintiff, Kearney Water & Electric Powers Company, had been adjudicated before the 27th day of December, 1911. There is attached to the record a paper purporting to be a notice to plaintiff to file its claim with the board for adjudication. It is dated September 19, 1911, but is not signed, nor has our attention been called to any evidence that it was served upon plaintiff. On the 27th day of December, 1911, the plaintiff filed with the state board its petition, alleging an appropriation of water from the North Platte river of more than 500 cubic feet per second, and asking that its priorities of right be determined, protected and enforced. The appropriators of water in that water division were notified, and a hearing had before the state board of irrigation, highways and drainage. The board found

that the plaintiff had appropriated 140 cubic feet per
second for water-power purposes under a 55.5 feet head and
22 cubic feet for irrigation purposes, and "that the priority
of the appropriation dates from the 1st day of September,
1886, on or before which date the works were completed
and the appropriation perfected by reason of applying the
water to beneficial use." None of the parties to the litiga-
tion was satisfied. Nearly all have taken appeals or cross-
appeals to this court.

It is contended that the plaintiff is estopped to claim
priority of appropriation because: (a) It did not com-
ply with the act of 1889 by posting notice; (b) it never
had its claim adjudicated under the act of 1895; (c) it
has never asserted any right to the waters of these streams
until it filed this claim; (d) these objectors have been con-
tinually operating their canals, and communities live and
subsist by reason of irrigation, extending 250 miles along
the North Platte and 100 miles along the South Platte;
(e) the North Platte river runs sometimes as low as 50,
20 or 32 cubic feet, and all of this would be lost by ab-
sorption or evaporation before it could reach plaintiff's
ditch. In such case this order would prevent defendants
from using the water and no good would result to plain-
tiff. The brief of the Tri-State Land Company assigns er-
ror as follows: "(1) The board erred in granting any
water for irrigation purposes, as no water rights have
ever attached to any specific land, nor has any landowner
consented thereto, nor any land, except 14 acres belonging
to the state, been irrigated successively prior to the year
1902. (2) The proof shows that only 66 2/3 cubic feet
per second were employed for power purposes prior to
1889, and the board erred in granting anything in excess
of that amount for power purposes. (3) The board erred
in granting any water for power, with a priority superior
to that of irrigation-users higher up the river."

In 1877 a statute was enacted giving corporations or-
ganized "for the purpose of constructing and operating
canals for irrigating, or water-power purposes, or both,"
the right of eminent domain. The act declared such

canals "to be works of internal improvement." Laws 1877, p. 168. In 1889 a statute was enacted entitled "An act to provide for water rights and irrigation, and to regulate the right to the use of water for agricultural and manufacturing purposes, and to repeal (the act of 1877)." Laws 1889, ch. 68. This act provided: "A person, company or corporation desiring to appropriate water must post a notice in writing in a conspicuous place at the point of the intended diversion." Article I, sec. 8. A failure to comply with this and other requirements "deprives the claimant of the right to the use of the water as against a subsequent claimant who complies herewith except as provided in the next section." Article I, sec. 12. Sections 13 and 14, art. I, are: "(13) All ditches, canals and other works heretofore made, constructed or provided by means of which the waters of any stream have been diverted and applied to any beneficial use must be taken to have secured the right to the waters claimed to the extent of the quantity which said works are capable of conducting and not exceeding the quantity claimed without regard to or compliance with the requirements of this chapter. (14) Persons who have heretofore claimed the right to water and who have not constructed works in which to divert it, and who have not diverted it nor applied it to some useful purpose, must, after this title takes effect, and within ninety (days) thereafter, proceed as in this title provided, or their right ceases." Section 11, art. II, provides: "Nothing in this chapter contained must be so construed as to interfere with or impair the rights to water appropriated and acquired prior to the passage of this chapter." Under these provisions of the act of 1889 one who had before that time "claimed the right to water," and had "constructed works in which to divert it," and had diverted and applied it to some useful purpose, was given the right of an appropriator. The act provided no other means of determining and fixing the extent and limitations of those rights. The policy of the act was to encourage the construction of works in which to divert water for irrigation and power

purposes. The capacity of the works constructed would afford evidence of the amount of the appropriation.

As the statute prior to the act of 1889 prescribed no method of making a claim of appropriation except the construction of the "works in which to divert" the water and diverting it or applying it to some beneficial use, the appropriator was not required to do more until his right was challenged. If he then claimed the amount which the works which he had constructed were capable of diverting to a beneficial use, and which he had diverted or so applied, his appropriation of that amount of water was complete. It does not appear that the plaintiff's rights were challenged until these proceedings were begun before the state board. The amount of plaintiff's appropriation then was the amount which the works which it had constructed before the act of 1889 were capable of so diverting, and which it had diverted or applied. If the plaintiff desired to increase its appropriation after the act of 1889, it would be required to comply with that act. It does not appear that the plaintiff ever made any appropriation under the act of 1889. The amount of its appropriation is therefore limited to the time when that act took effect. But, as to that amount, its right was already fixed, and it was not necessary to take any action under the act of 1889. The construction of its works and diversion and application of the water was all the notice of rights which the act of 1877 required, and was a sufficient assertion of its rights until those rights were challenged.

In *Enterprise Irrigation District v. Tri-State Land Co.,* 92 Neb. 121, it is said in the first paragraph of the syllabus that, before the act of 1911, "one who has constructed a canal for the purpose of carrying water for hire to be used upon the lands of others, and is ready and willing to furnish the water to such landowners as will take it, has made the only application of water to a beneficial use that he can make, and his right to an appropriation continues as a developing right until all lands along the canal for which the water was originally appropriated use the same; provided, formerly, that the water be applied to the land

within a reasonable time, and, now, within the time limited by statute." The rule that it must be applied within a reasonable time is principally for the benefit of the landowners and to prevent fraudulent appropriations of water. It would often happen, as in this case, that such lands could not be watered from any other source. In some cases the circumstances and conditions may require a longer time to apply the water to all the land for which it is appropriated, and in other cases a shorter time would be reasonably sufficient. This appropriation having been made under the law which permitted appropriations without actually applying it in any specified time, and this proceeding having been begun within a few months after the act of 1911 took effect, the plaintiff should be regarded as having appropriated water, within the limits of the capacity of its works, for lands under its ditch to which the water can be applied and was applied within a reasonable time. These defendants, and all persons contracting with them, were bound to take notice of the appropriation of the plaintiff so far as it had been perfected under the act of 1877. Those rights were expressly preserved by the act of 1889, and any one interfering with them did so at his peril.

The objection that plaintiff saw defendants constructing ditches, etc., and did not notify them of its claim was raised and disposed of in *McCook Irrigation & Water Power Co. v. Crews,* 70 Neb. 115. The court say: "As heretofore indicated, the inference is warranted that the defendants were seeking to obtain a right to the use of the water as appropriators under the law as then existing, subject, of course, to the plaintiff's prior right. This of itself, we think, disposes of the question of estoppel."

There is no merit in the objection that plaintiff never had its claim adjudicated. Under the statute of 1895 any appropriator might have his claim adjudicated by the state board. In such a proceeding all appropriators in the same water division should be made parties. No appropriator who has neglected to have his claim adjudicated, or has

97 Neb. 10

failed to make other appropriators in the same water division parties thereto, can obtain any rights as against other appropriators whose rights have not been so adjudicated. The act of 1889 (laws 1889, ch. 68, art. I, sec. 7) provides: "As between the appropriators the one first in time is first in right." This, of course, would apply to all appropriators at that time either under that act or the prior statute. Those who appropriated water from the same source of supply, after the plaintiff had perfected its appropriation, did so knowing that the appropriator first in time is first in right. And those who contracted with such subsequent appropriators, either individuals, corporations or communities, could take no prior right.

The act of 1877 made no distinction between the use of water for irrigation and its use for power purposes. An appropriation for power purposes was regarded as favorably as for irrigation purposes. It was made in the same way, and an appropriation under that act for power purposes was recognized and protected by the act of 1889 equally with appropriations for irrigation. Our present statute declares that water for irrigation is "a natural want" (Rev. St. 1913, sec. 3369); and that, "when the waters of any natural stream are not sufficient for the use of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming it for any other purpose, and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes." Rev. St. 1913, sec. 3372. It is not necessary to determine in this case how these provisions of the statute are to be applied by the state board when conflicting applications for appropriation are pending. In any view, it must follow that vested rights of completed appropriations cannot be destroyed without compensation, and no condemnation proceedings have been attempted in this case. The state board in this case was not called upon to grant water for power. Its duty was to determine the validity and extent of an alleged completed appropriation. Under the present statute appropriations may be abandoned, and

the plaintiff's appropriation for power purposes should be regarded as abandoned, except so far as it had equipped itself to utilize it for that purpose when the act of 1889 took effect, or did so equip itself within a reasonable time thereafter. Its appropriation for irrigation purposes should be considered as abandoned, except so far as it was completed by the water being applied to the land in a reasonable time.

The act of 1911 provides: "No permit to irrigate any land shall be allowed unless the owner or owners of such land shall give consent to the same in proper form, duly acknowledged before some officer legally qualified to take acknowledgments." Laws 1911, ch. 153, sec. 21. It would seem that this provision is as effective when adjudicating prior appropriations as upon applications to appropriate. The plaintiff, while this proceeding was pending before the state board, procured the consent of certain landowners whose lands, it is claimed, can be watered from plaintiff's ditch, and it was the duty of the board to allow and confirm plaintiff's valid appropriation of water for the lands of owners so consenting. Before the act of 1895 water could be appropriated without applying it to any specified land; that is, one could appropriate water for irrigation, and afterwards "may use the same to irrigate such lands, as he may see fit." *Farmers Canal Co. v. Frank*, 72 Neb. 136. Since the act of 1895, in order to appropriate water for irrigation, the land to which it is to be applied must be specified. *Idem.* Frank's application was filed in 1902 and described no land. For this reason, the judgment of the district court, allowing his application, was reversed, but the district court was directed to remand his application to the state board with leave to amend. The state board correctly gave plaintiff opportunity to procure the consent of the owners of lands under the plaintiff's irrigation ditch as it was completed when the act of 1889 took effect, and confirmed its appropriation for the irrigation of the lands whose owners so consented, as well as its appropriation for power purposes.

The irrigation works of some of the defendants are located hundreds of miles above the intake of the plaintiff's canal. It is said that frequently during the summer months the river is dry at the plaintiff's intake, and to allow the water to pass the works of these defendants which could never reach the plaintiff's ditch would, in such case, be a vain thing. It would render thousands of acres of valuable irrigated land entirely barren and useless and without any benefit to the plaintiff. The question so presented is worthy of the most careful consideration of the state board. The use for which water is appropriated must be a reasonable use. The supreme court of the United States in *Basey v. Gallagher,* 20 Wall. (U. S.) 670, say: "Water is diverted to propel machinery in flour-mills and saw-mills, and to irrigate land for cultivation, as well as to enable miners to work their mining claims; and in all such cases the right of the first appropriator, exercised within reasonable limits, is respected and enforced. We say within reasonable limits, for this right to water, like the right by prior occupancy to mining ground or agricultural land, is not unrestricted. It must be exercised with reference to the general condition of the country and the necessities of the people, and not so as to deprive a whole neighborhood or community of its use and vest an absolute monopoly in a single individual." There is no doubt that this principle applies under our statute, and that it is the duty of the state board to prevent a wanton waste of the public waters of the state. This is a matter of administration. The board has determined the amount and priority of the plaintiff's appropriation. When nature supplies the water to satisfy such appropriation it must not be taken by subsequent appropriators to the injury of plaintiff. The state board should by regulations from time to time allow subsequent appropriators such use of the water as will not injure the plaintiff. The board should exercise a reasonable discretion. It is the policy of the state to preserve the public waters for the greatest benefit of all the people. A prior appropriator has the prior right to a reasonable use of the water so appropriated. But the plaintiff obtains that

right from the public for the use of the people, and must so use it as not to unreasonably injure the rights of another. Subsequent appropriators should not be refused the use of their appropriations unless such use substantially deprives the prior appropriator of his beneficial use thereof.

Such questions are not included in the findings and decision of the state board as contained in this record. As we have already observed, the board, as disclosed by this record, has only determined the amount and date of the appropriation of the applicant. The evidence upon the questions determined by the board is not as clear as might be desired. This court upon appeal cannot disturb the findings of the state board upon conflicting evidence unless it is clearly wrong. The statute allowing this direct appeal expressly declares: "The procedure to obtain such reversal, modification or vacation of any such decision or order upon which a hearing has been had before said board, shall be governed by the same provisions now in force with reference to appeals and error proceedings from the district court to the supreme court of Nebraska." Rev. St. 1913, sec. 3408. The plaintiff was a pioneer in attempting to develop the irrigation and water powers of the state. It, and those through whom it claims, had expended hundreds of thousands of dollars before these objectors entered the field. This, of course, will not excuse plaintiff for any failure to comply with the law. But the evidence is not so clear as to require us to interfere with this determination of the matter. The decision of the state board is therefore affirmed without prejudice to an application to the state board by any party for such further regula‑ tions as may be necessary to secure a just and reasonable use of the rights determined by this decision.

AFFIRMED.

LETTON, J., dissenting in part.

With the general principles stated in the opinion, I concur. My objection to the opinion is that it does not consider the evidence, but assumes that the state board decided the matter upon conflicting evidence, and that therefore

its decision should not be disturbed. What the board evidently did was to confirm the claims of the Kearney company to the amount of water which the evidence shows it was using at the time of the hearing. As I read the record, the evidence does not conflict in regard to the essential facts: That the construction of the canal was begun in 1882 and the first two miles were completed that year; that the first 12 miles were completed by September 1, 1883, and the canal entirely finished in or before June, 1886; that from 1886 until 1890 no more than 66 2/3 cubic feet per second was actually used for power purposes, and at no time until very recently more than 5 cubic feet per second for irrigation purposes in any one year. In the meantime the Minatare, Mutual, Winters Creek, Enterprise, Mitchell, Castle Rock, Tri-State, Belmont, and Logan Canal Companies and Irrigation Districts made approriations and diverted water to a beneficial use from the North Platte river many miles above the intake of the Kearney canal. In 1890 additional turbine wheels were placed in the Kearney canal for the development of power which, with these first installed, required 140 cubic feet of water per second.

The evidence shows, however, that the use of this increased power had been long contemplated before the actual installation of the latter wheels, and that the purpose to use the water necessary to develop the power from both sets of wheels had never been abandoned.

Soon after the completion of the canal, and continuously for a number of years thereafter, a fourteen-acre tract of land belonging to the State Industrial School was irrigated. There is no proof that more than 160 acres of land were irrigated during any one year until about 1900, when for five years about 350 acres in all were irrigated. From that time on water was sparingly used, until shortly before the hearing. The canal company had a reasonable time after the completion of the ditch wherein to use the water for irrigation. For 20 years that company failed to apply in any one year more than about 5 cubic feet per second to a beneficial use for irrigation purposes, and most

of the time a much smaller quantity.  The most vital principle in the law of irrigation is that all appropriated water must be made to perform its full duty, and that no one shall fail to apply it and at the same time prevent those who seek and are ready to use it from applying it to a beneficial use.  Having failed to apply more than this quantity of water to the land for such a length of time, the right to the use of water in excess of that amount for irrigation purposes ceased.

Applying the principles stated in the opinion to the undisputed facts, the appropriation for irrigation purposes should not have been confirmed for more than 5 cubic feet of water per second of time.  The excess appropriation is of water enough to irrigate nearly 1,200 acres of land, and its effect may be to reduce the amount of cultivatable land under the appropriations of the appellants to that extent.  The works of the appellants water an arid region as compared with that in which the Kearney canal is situated, and, if any doubt exists, it should be resolved in their favor.  I, therefore, dissent from that portion of the opinion which allows such excess appropriation.

BARNES, J., joins in the dissent.