PETER VONBURG ET AL., APPELLANTS, V. FARMERS IRRIGA-
TION DISTRICT ET AL., APPELLEES.

FILED APRIL 18, 1935. No. 29385.

*Morrow & Morrow,* for appellants.

*Neighbors & Coulter, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOOD, J.

This is an action for injunction and other equitable relief. The trial court sustained a general demurrer to the petition. Plaintiffs refused to further plead, and the action was dismissed. Plaintiffs have appealed.

The following is a brief summary of the pertinent facts alleged in the petition: Each of the plaintiffs is the owner of land that has been regularly irrigated for more than

40 years from water furnished through a canal which is now owned by the defendant corporation. Plaintiffs claim the right to a continuation of this service under and pursuant to a prior appropriation of the water and to contracts entered into between them and the Farmers Canal Company, a former owner of the canal, and without being compelled to prorate the water in the canal with other patrons of the defendant corporation. The individual defendants are the manager and officers of the defendant corporation.

In 1887 a number of farmers organized a corporation, known as the Farmers Canal Company, for the purpose of constructing a canal for irrigation and other useful purposes. They took the proper steps to appropriate water from the North Platte river. The appropriation was for a sufficient quantity of water to fill a canal 40 feet wide on the bottom and 4 feet in depth. Between that year and 1890 the canal company constructed a canal about 10 miles in length. No stock in the corporation was actually issued. The work of constructing the canal was done by the farmers who organized the company, and each was entitled to stock in the corporation to the amount of labor or material furnished by him. In the year 1890 the owners of the canal company were irrigating their lands with the water through the canal. In the fall of 1890 the canal company entered into an arrangement with one Wright and others, whereby the then owners arranged to transfer to Wright and his associates the corporate franchise and canal, but were to retain the exclusive, perpetual right to the use of sufficient water from the canal to irrigate the lands then irrigated and owned by the original incorporators or stockholders of the canal company. In January, 1891, the contracts between the canal company and its former owners were entered into and were exactly alike, with the exception of the name of the landowner and the amount of water for irrigation purposes to which each would be entitled. The plaintiffs are either the owners of such contracts, or successors in

interest to such owners. The contracts in question were executed as a part consideration for the transfer of the rights of the then owners of the canal company to Wright and his associates. Wright and his associates took over and became the owners of the Farmers Canal Company, subject to the several contract rights of the former owners. Subsequently, by mesne conveyances, the Tri-State Land Company and the defendant corporation, in turn, became the owners of the canal, each taking with full knowledge of and subject to whatever rights the first owners had, pursuant to their several contracts.

In each of the contracts the canal company agreed, for itself and its successors, "to deliver the water at such points along the line of said canal, at headgates erected and provided by the second party, his heirs, and assigns, in such amount at each headgate as may be directed by the party of the second part. The aggregate of said water not to exceed the amount hereinabove stated," being the amount provided for in each contract. The method of measuring the water was provided for. Other provisions of the contract are as follows:

"And for the better security of the second party (the former stockholder) for the faithful fulfilment and performance of the covenants and agreements upon the party of the first part, its successors and assigns forever, hereinabove covenanted and agreed by the said first party upon its part to be kept and performed, the said first party does hereby waive all right to prorate the water in said canal. And the said second party, his heirs and assigns forever, shall be supplied with water first in preference over any and all subsequent stockholders in the said canal. And it is further specially agreed that this perpetual water right, as above set forth, shall be forever free from any and all assessments or taxes of any nature or for any purpose whatsoever.

"Said first party agrees to deliver the water as above set forth, at the headgates erected and provided by the second party for a distance not to exceed 40 miles along

said canal from the point where the first party diverts the water, for the supply of said canal, from the North Platte river, viz.: at a point in section ten, township twenty-three, range fifty-eight, west of the 6th P. M. where the principal headgate is now located and established."

November 17, 1890, the canal company, at the headgate of its canal, posted notice of its intention to appropriate and claim the use of water from the North Platte river, in addition to its former claim, to the amount of 200,000 miners' or statutory inches for irrigation and other useful purposes. Such notice specified that the canal would be 80 feet wide on the bottom, with a slope of one to one and a depth of 8.84 feet at the point of diversion. Later, on application to the state board of irrigation, the claim of the canal company was adjudicated to be a valid appropriation of water to the extent of 1142 and 6/7 cubic feet per second and dating from September 16, 1887.

The effect of this adjudication by the state board of irrigation was before this court in *Farmers Canal Co. v. Frank,* 72 Neb. 136, wherein it was said (p. 154): "Though the board in adjudicating the claim of the Farmers Canal Company, in all probability, acted erroneously, and made an adjudication that the Farmers Canal Company was entitled to an appropriation greater than it was possessed of at that time, still, it had jurisdiction to hear and determine, and no appeal having been taken from its determination, its order allowing the appropriation is final and cannot be attacked collaterally." We are of the opinion that, while the right of the canal company to its appropriation to the extent of 1142 and 6/7 cubic feet per second is valid under that adjudication, it cannot affect the contractual rights of plaintiffs previously acquired.

During the time that the Tri-State Land Company owned the canal it denied the right of the contract holders to receive water without paying therefor. Litigation arose which was finally determined by this court in *Fenton v.*

*Tri-State Land Co.,* 89 Neb. 479. It was therein held that the contracts were valid and enforceable as respects the right to receive water without making any payment therefor. The court, however, did not pass upon the question as to whether the provision for nonproration of water was enforceable, since up to that time no question had been raised as to the insufficiency of water to supply the needs of all patrons of the Tri-State Land Company. Thereafter, water was furnished to the owners and holders of the contracts as before until the year 1934, when there was a scarcity of water and not a sufficient supply from the natural waters of the river to furnish the required amount for all of the patrons of the defendant corporation. The defendant corporation and its officers then refused to furnish to the contract holders other than a *pro rata* share of the water carried in the canal from the natural waters of the stream.

The defendant corporation has acquired the right to obtain storage water which it also carries in the canal; but plaintiffs in their petition assert no right to any portion of the storage water carried in the canal, but only to the water for which their contracts call, provided that the natural flow of water in the North Platte river at the headgate is sufficient to furnish them that quantity.

We are of the opinion that the present controversy hinges on the question of whether plaintiffs, by their contracts and under the law as then existing, acquired a vested right to the quantity of water for which their contracts call.

It is true that the original organization of the Farmers Canal Company contemplated a longer canal than 10 miles and the application of water to other lands, but the incorporators had constructed the canal but 10 miles in length, and it was optional with the then owners whether they would ever extend it beyond its present limits. They had the undoubted right to carry the irrigation project no farther. At the time of the transfer

of their property and franchise to Wright, they had the undoubted right to the use of water for irrigating purposes to the extent that they were then using it upon their lands. They could not be required to extend the canal or to give any other person the right to use the water from the canal at that time. We think that to a prospective purchaser of the canal, who might desire to purchase for the purpose of extending the canal, under the law as then existing, they could say: "We will sell you the canal and our franchise upon the condition that our appropriation and use of the water will be continued without our being compelled to prorate, in time of scarcity, with other patrons whom you may procure by extension of the canal." This they did. In the transfer to Wright and his associates, and under the contracts then executed, plaintiffs and their assignors were expressly given such right.

In *Fenton v. Tri-State Land Co., supra,* it was held: "Where, in 1891, certain owners of an irrigation canal which was in operation for a distance of about ten miles conveyed the same, reserving to themselves a perpetual right to water under a common agreement, the court will apply the provisions of chapter 68, Laws 1889, and hold their rights equal as to each other, but superior to those of consumers under a new section of canal beginning at the end of the ten miles already in operation." In the opinion the court called attention to sections 12 and 13, art. II, ch. 68, Laws 1889, in force when the contracts were made. After quoting these sections the court said: "Under these provisions it is plain that the rights of the original stockholders must be held to be a common right by virtue of their own previous custom and agreement, and that their priority, in the absence of any such agreement, would have been in the order of their location along the line of the canal. We must consider the contract holders equal in priority as against subsequent consumers, whose lands lie beyond the ten miles of the original ditch, but perhaps subject to the statutory requirement that

in time of scarcity the water shall be equally distributed. This, however, has not been argued and it is unnecessary to determine."

Defendants contend that, under the provisions of section 13, art. II, ch. 68, Laws 1889, which was in force at the time the contracts were entered into, plaintiffs are compelled to prorate waters with subsequent patrons of the defendant corporation. Said section reads:

"In case any person, company or corporation has constructed a ditch for the purpose of diverting the water of any river, creek, canyon, ravine or spring, for the purpose of selling the water thereof for irrigating purposes, the owners or cultivators of said land along the line of and covered by said ditch or canal, are entitled to and have the right to the use of water from said ditch or canal, for the purpose of irrigating said land, so owned or cultivated in the following order:

"First. All persons through whose land such ditch or canal runs are entitled to the use of the waters thereof in the order of their location along the line of said ditch or canal.

"Second. After those through whose land the ditch or canal runs, those upon either side of the line of the ditch or canal are entitled to the use of the waters thereof, those equally distant from the line of said ditch or canal are entitled to priority in the order of their location along the line of said ditch or canal; *Provided,* That in times of scarcity of water the same shall be equally distributed to the consumers thereof."

From a careful examination of the quoted section, we are of opinion that it does not sustain defendants' contention. It provides for different classes, with priority rights vesting in each class. Those in each of the classes possess equal rights, but each of the classes is assigned priority in their order. We think the proviso above quoted must be regarded as relating to the several classes. It was not intended to destroy the priorities established by the law or previously vested rights. The provision for

proration was not intended to affect a prior vested right. In our opinion, the original owners of the canal were in a class by themselves, and all in that class are entitled to the same priority. They conveyed their franchise and the canal to others, with the distinct reservation in themselves of rights which they then possessed. The vendee could not complain, and all those patrons of the vendee or its successors had knowledge of the rights of the plaintiffs, and that their contract or arrangement with the defendant corporation for the use of water was subject to the rights of the plaintiffs. The holding of this court in *Fenton v. Tri-State Land Co., supra,* wherein it was held that "the court will apply the provisions of chapter 68, Laws 1889, and hold their rights equal as to each other, but superior to those of consumers under a new section of canal beginning at the end of the ten miles already in operation," fixes and determines that the rights of the plaintiffs are superior to the subsequent rights of the patrons of the defendant corporation. It follows that, if their rights are superior, then they are entitled to the water in preference to the subsequently acquired patrons of the defendant corporation.

We are of the opinion that, plaintiffs being all of the persons entitled to use of the water at the time they transferred their franchise and canal to Wright and others and entered into contracts preserving to themselves priority to use of the water, their rights became vested as to such use of the water. It follows that the district court erred in sustaining the demurrer to plaintiffs' petition.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

REVERSED.