PETER VONBURG ET AL., APPELLEES, V. FARMERS IRRIGATION DISTRICT ET AL., APPELLANTS.

270 N. W. 835

FILED JANUARY 5, 1937. No. 29916.

*Neighbors & Coulter,* for appellants.

*Morrow & Morrow, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOOD, J.

This is an action for injunction. Plaintiffs had decree. Defendants have appealed.

This is the second appearance of this cause in this court. The trial court sustained a demurrer to plaintiffs' petition. Plaintiffs refusing to further plead, a judgment of dismissal was entered. Plaintiffs appealed, and the judgment of the district court was reversed. The opinion of this court appears at 128 Neb. 748, 260 N. W. 383. Thereafter defendants filed answers, and issues were joined, with the result above indicated.

It is the contention of plaintiffs that the law of the case was settled on the former appeal and must rule the decision in this second appeal. The rule is that the law of the case is settled and is applicable where a second trial is had upon the same issues, and the evidence is substantially the same as on the first trial. To the extent that the material facts developed on the second trial vary from the allegations of the plaintiffs' petition, the rule is inapplicable.

It may be observed at the outset that all of the plaintiffs are not in an identical situation. Those plaintiffs whose claims are distinct from the others will be separately treated in this opinion.

In 1887 a number of farmers organized a corporation, known as the Farmers Canal Company, for the purpose of constructing a canal for irrigation and other useful pur-

.poses. They took the proper steps to appropriate water from the North Platte river. They claimed an appropriation for a sufficient quantity of water to fill a canal 40 feet wide on the bottom and 4 feet in depth. Between 1887 and 1890 the canal company constructed a canal about 10 miles in length. No corporate stock was issued. The work of constructing the canal was performed by the farmers who organized the company, and each was entitled to stock in the corporation equal in amount to the value of the labor, material or money furnished by him. Some time in the year 1890 the owners of the canal company were irrigating some of their lands with waters from the canal. In the fall of 1890 the canal company entered into an arrangement with one Wright and others, whereby the then owners arranged to transfer to Wright and his associates the corporate franchise and canal, but reserving to themselves the exclusive, perpetual right to the use of a specified quantity of water from the canal for irrigation purposes. Each of the original owners of the canal, save one, which will be hereinafter considered separately, was given a contract for a specified quantity of water for irrigation purposes. The plaintiffs herein are either the owners of such contracts or successors in interest to such owners. The contracts in question were executed as a part consideration for the transfer of the rights of the then owners of the canal company to Wright and his associates. In truth and in fact, the canal and franchise and right to the use of water were only in part surrendered and turned over to Wright and associates. The owners retained a perpetual easement in the canal and the right to use of the quantity of water called for in their contracts. That part which was reserved to the original owners of the canal company, in fact, never passed to Wright and associates.

The contracts between the canal company and each of the former owners are identical except as to name and amount of water. Each of the contracts, among other things, contains these provisions:

"And for the better security of the second party (original

owner) for the faithful fulfilment and performance of the covenants and agreements upon the party of the first part, its successors and assigns forever, hereinabove covenanted and agreed by the said first party upon its part to be kept and performed, the said first party does hereby waive all right to prorate the water in said canal. And the said second party, his heirs and assigns forever, shall be supplied with water first in preference over any and all subsequent stockholders in the said canal. And it is further specially agreed that this perpetual water right, as above set forth, shall be forever free from any and all assessments of taxes of any nature or for any purpose whatsoever.

"Said first party agrees to deliver the water as above set forth, at the headgates erected and provided by the second party for a distance not to exceed forty miles along said canal from the point where the first party diverts the water, for the supply of said canal, from the North Platte river, viz., at a point in section 10, township 23, range 58, west of the 6th P. M. where the principal headgate is now located and established."

The validity of these contracts was involved in the case of *Fenton v. Tri-State Land Co.*, 89 Neb. 479, 131 N. W. 1038. The then owner of the canal, the Tri-State Land Company, denied the right of the contract holders to receive water without paying therefor, and in the cited case it was held that the contracts were valid and enforceable with respect to the right to receive water, without making any payment therefor. The court did not pass upon the question of whether the provision for nonproration of water was enforceable, since up to that time no question had been raised as to the insufficiency of the water to supply the needs of all patrons of the Tri-State Land Company, the then owner of the canal. Thereafter water was furnished to the contract holders as before until the year 1934, when there was a water scarcity and an insufficient amount to supply the needs of all of the patrons of the defendant corporation. It may be noted that the corporate

defendant has acquired the right to obtain storage water which is also carried in its canal, but plaintiffs assert no right to any part of the storage water, but only to the amount of water for which their contracts call, provided that the natural flow of the water in the canal at its headgate is sufficient to supply them that quantity.

In the former appeal it was held that, under the facts pleaded in the petition, the plaintiffs had acquired a vested right to the quantity of water for which their contracts call. The facts developed in a subsequent trial are somewhat at variance with the allegations of the petition and require us to reexamine the question as to whether the plaintiffs have obtained a vested right to the waters called for by their contracts.

From the present record it appears that the water had not been actually applied and used by the plaintiffs for irrigation purposes in a number of instances at the time the contracts were made, and that the water rights were not attached to any particular lands. The question then arises whether the water right, not attached to any particular land, was a property right vested in the plaintiffs. The applicable law in existence at the time a contract is written becomes a part thereof, and the validity of a contract must, therefore, be determined by the law in existence at the time of its making.

It is a rule quite generally recognized that the validity of a contract depends upon the state of the law at the time it was made. 13 C. J. 261. This principle was recognized and applied in determining the validity of the contracts in question in the case of *Fenton v. Tri-State Land Co., supra.* In that case it was said (p. 486): "At the time that the Farmers Canal Company was incorporated, there was no statute in this state providing for the appropriation of water from the public streams of the state. * * * In 1889 a complete act (Laws 1889, ch. 68) evidently intended to cover the whole subject of irrigation was passed. The transfer of ownership of the Farmers Canal Company from the incorporators to Wright and his associates was

made after the passage of the latter act, and the legality of the contracts must be measured by the law as it then stood, subject of course to any limitations subsequently made under the police power of the state." The rule was recognized and applied in *Boise City Irrigation & Land Co. v. Turner,* 176 Fed. 373.

At the time these contracts were entered into, the irrigation act of 1889 (Laws 1889, ch. 68) was then in force, and the validity of the contracts in question must be determined under that law.

Section 1, ch. 68, Laws 1889, reads as follows: "The right of the use of running water, flowing in a river or stream or down a canyon, or ravine, may be acquired by appropriation by any person or persons, company or corporation organized under the laws of the state of Nebraska." By section 8 of that act provision is made for the giving of notice of the intended appropriation. Section 9 provides that within 60 days after notice has been posted the claimant must commence construction of the works in which it is intended to divert the water. Section 10 reads: "By completion is meant conducting the water to the place of intended use." Section 11 reads: "By compliance with the above rules, the claimant's right to the use of water relates back to the time the notice was posted." Section 13 of the act provides: "All ditches, canals and other works heretofore made, constructed or provided by means of which the waters of any stream have been diverted and applied to any beneficial use must be taken to have secured the right to the waters claimed to the extent of the quantity which said works are capable of conducting and not exceeding the quantity claimed without regard to, or compliance with the requirements of this chapter."

In Wiel, Water Rights (3d ed.) p. 428, it is said: "Historically, an appropriation was simply the taking possession of the stream (a 'possessory right' on the public domain), so that diversion was the last step to such possession, and the last step in completing the appropriation. Consequently the California Civil Code says: 'By completion is meant

conducting the waters to the place of intended use,' ignoring actual application as an element of completion of the right. * * * It (appropriation) consisted in possession of the flow of the stream; diversion constituted the appropriation because it constituted possession, whence the rule protecting appropriators 'by actual diversion' and likewise the enforcement of the doctrine of relation upon completion of construction work and diversion; capacity of ditch, as the amount in possession, measured the right; the right, as one to possession of the stream, was independent of place or mode of use; nonuse did not cause loss of right without voluntary abandonment of possession; * * * Beneficial use was represented in the acquisition of the right by the requisite of *bona fide intention,* already set forth. The actual accomplishment of this intention was necessary, * * * the right being complete on diversion, that completing the formalities equivalent to taking possession of the stream."

The doctrine above announced was applied in the case of *Kearney Water & Electric Powers Co. v. Alfalfa Irrigation District,* 97 Neb. 139, 149 N. W. 363. In the course of the opinion in that case this court said (p. 143):

"Under these provisions of the act of 1889 one who has before that time 'claimed the right to water,' and had 'constructed works in which to divert it,' and had diverted and applied it to some useful purpose, was given the right of an appropriator. The act provided no other means of determining and fixing the extent and limitations of those rights. The policy of the act was to encourage the construction of works in which to divert water for irrigation and power purposes. The capacity of the works constructed would afford evidence of the amount of the appropriation.

"As the statute prior to the act of 1889 prescribed no method of making a claim of appropriation except the construction of the 'works in which to divert' the water and diverting it or applying it to some beneficial use, the appropriator was not required to do more until his right was challenged. If he then claimed the amount which the

works which he had constructed were capable of diverting to a beneficial use, and which he had diverted or so applied, his appropriation of that amount of water was complete."

On page 145 of the opinion it was further said: "This appropriation having been made under the law which permitted appropriations without actually applying it in any specified time, and this proceeding having been begun within a few months after the act of 1911 took effect, the plaintiff should be regarded as having appropriated water, within the limits of the capacity of its works, for lands under its ditch to which the water can be applied and was applied within a reasonable time." The same principle was applied in the case of *Enterprise Irrigation District v. Tri-State Land Co.*, 92 Neb. 121, 138 N. W. 171, and reaffirmed in the case of *Kilpatrick Bros. Co. v. Frenchman Valley Irrigation District*, 101 Neb. 155, 162 N. W. 422.

The evidence supports the finding of the trial court that the amount of water diverted from the river by the Farmers Canal Company was more than sufficient to supply the quantity of water provided in the contracts executed between the canal company and its original stockholders.

We therefore conclude that the original stockholders had a property right vested in them to the extent of the water claimed in their several contracts and such property right might be sold and disposed of as any other property under the law as it then existed.

In *Nichols v. McIntosh*, 19 Colo. 22, 34 Pac. 278, it was said (p. 27) : "Property rights in water consist not alone in the amount of the appropriation, but, also, in the *priority* of the appropriation. It often happens that the chief value of an appropriation consists in its *priority* over other appropriations from the same natural stream. Hence, to deprive a person of his priority is to deprive him of a most valuable property right." It necessarily follows that the owner of a priority right to the use of water is the owner of property and he cannot be deprived thereof without due process of law. Expressions may be found in some of our former decisions that the patrons of an irrigation canal,

and not the canal company which constructed the canal, are the real owners of the appropriation. While that point was not actually involved in any of the cases in which the expressions were used, we think the preference clause in these contracts is binding, in any event. The evidence clearly shows that the parties to whom these contracts were issued were all of the stockholders in the company and the only consumers of the water in the canal prior to the issuance of the contracts.

Defendants contend that the Farmers Canal Company did not have power to make a valid agreement, giving one landowner a preference in the use of water over another for a water right under the same appropriation. We think that this may be admitted. In this instance, the water right which the plaintiffs have in this case was reserved to them and never passed to the defendant corporation.

Defendants contend that, in any event, there is a distinction between the rights of landowners, whose land may be irrigated from the first 10 miles of the canal, and the rights of those whose lands may be irrigated under the extended portion of the canal. We are unable to perceive any distinction in this respect. Since plaintiffs, by their contracts and reserves, acquired a vested property right, as we have already seen, it was superior to the rights of any subsequent patrons of the canal company or its successor in interest.

The lands of plaintiffs Logan and Ledingham lie about 20 miles below the headgate or place of diversion of the water from the Platte river. Defendants contend that, since the lands lie below the constructed portion of the canal, as it existed at the time the contracts were entered into, and their lands were not then irrigated and could not be irrigated from the canal as it then existed, they could not have had a vested right on account of the beneficial application of water to their lands when the contracts were originally issued in 1891. We think the contention is without merit. The contracts provided for the application of water within a distance of 40 miles from the headgate. As we have already seen, each of the contract holders had a

property right to the quantity of water specified in his contract, to be applied to land within a distance of 40 miles from the headgate, and when the ditch was constructed to that point and the water conducted thence, it related back to the time of the original appropriation. We think the contracts of plaintiffs Logan and Ledingham are valid and enforceable.

Defendants contend that plaintiff Gibson possesses no water-right contract. The contract claimed by Gibson is under a conveyance from one Minner. It seems to be conceded that Minner was the owner, at one time, of one of the water-right contracts, and in the case of *Fenton v. Tri-State Land Co., supra,* it was determined that the contract owned by Minner was attached to and made appurtenant to the southeast quarter of section 9, township 23 north, range 57 west of the 6th P. M.; that Minner was the owner of that land and also the owner of the south half of the northeast quarter in section 21, township 23 north, range 57 west of the 6th P. M.; that while Minner was the owner of both tracts of land, in 1912, he ceased using the water on his land in section 9, and thereafter used it on his land in section 21, and continued such use until he sold the land to Gibson in 1917. Gibson has since used the water upon his land from 1917 to 1934. The evidence discloses that the defendant corporation had knowledge of the fact that Gibson was using the water upon his land in section 21, and that it never made any objection thereto except to raise the question of whether he, with the other contract owners, should be required to prorate the water in the canal with other patrons of the defendant corporation.

Defendants contend that, since the water was once attached and became appurtenant to the land in section 9, it could not thereafter be severed and transferred to other land, at least without the consent of the owners of the tracts to which it was attached, the owner of the tract to which it was attempted to be transferred, and without the consent of the defendant corporation. Minner was the owner of the tract to which the land had been attached and

the owner of the tract to which he had transferred the use of the water. The long-time use of that water, from 1912 to 1934, without question from the corporate defendant, is sufficient to indicate that the corporate defendant acquiesced in and consented to the transfer.

Defendants are barred by the statute of limitations from now asserting nonconsent of the corporate defendant to the transfer of the water right to the land now owned by Gibson.

Defendants challenge the right of the plaintiff Kearney to the validity of the water contract claimed by him, because it was not issued until 1903, after the original Farmers Canal Company had parted with its title. We think that is immaterial under the circumstances. The question of the validity of Kearney's contract was involved in the case of *Fenton v. Tri-State Land Co., supra,* and was there adjudicated to be valid, except as to the same question, involved in all of the contracts, as to whether he was required to prorate with subsequent patrons of the owners of the canal.

The trial court, with respect to Kearney's right, entered this finding: "That the water right now owned by the plaintiff Charles M. Kearney was not actually issued until 1903, which was after the Farmers Canal Company had lost title to said canal. The court finds, however, that said water-right contract was issued in accordance with an understanding made at the time the other water-right contracts were issued and that validity of said contract was in issue in the *Fenton* case herein referred to and it was therein decreed that said water-right contract was valid and binding on the predecessor of the defendant Farmers Irrigation District, the Tri-State Land Company, and the validity thereof cannot therefore be questioned in this action."

We think the record fully sustains this finding. It follows that the contract of plaintiff Kearney is in the same class with that of the other plaintiffs, so far as this action is concerned.

It is argued by defendants that plaintiffs, in any event,

should be limited to three acre-feet per acre during each irrigation season. We are inclined to agree with this proposition. While plaintiffs have a vested right to a certain quantity of water, they are not entitled to use more water than can be beneficially used upon their lands. It is within the police power of the state to prevent wasteful use of water. The legislature has provided that one second-foot for each 70 acres shall be the maximum rate of diversion, and that three acre-feet per acre during each irrigation season shall be the maximum quantity. We are of the opinion that the right of plaintiffs should be thus limited. Anything in excess of that would be a wasteful use of the water.

In *Fenton v. Tri-State Land Co.*, *supra*, it was held that the defendant was entitled to make reasonable rules and regulations in the maintenance of its irrigation system. Conserving all water for beneficial use is a part of the public policy of the state, and we think that the defendant corporation is entitled to make reasonable rules and regulations with reference to the days on which water shall be furnished to each of the plaintiffs.

The trial court made elaborate findings of fact and separate conclusions of law. Each of the findings of fact appears to be sustained by the record, and the conclusions of law are likewise approved except in one respect, wherein the court held that each of the plaintiffs was entitled to the quantity of water called for in his contract, or a sufficient amount to irrigate his lands, without being compelled to prorate with other patrons of the district.

That part of the trial court's second conclusion of law, which awards to plaintiffs the amount of water for which their water-right contracts call, "or a sufficient amount to properly irrigate the lands to which it is applied," should be limited to a maximum rate of flow, not exceeding one second-foot for each 70 acres of land and not exceeding a total of three acre-feet during each irrigation season. The decree of the district court, with this slight modification, is affirmed.

AFFIRMED AS MODIFIED.