DAVID ROE, APPELLEE, V. HOWARD COUNTY ET AL., APPELLANTS.

FILED JANUARY 3, 1906. No. 14,020.

1. **Appeal: TRIAL DE NOVO.** In appeals in equity cases, this court will examine the evidence and arrive at an opinion of the facts established, uninfluenced by the conclusion arrived at by the trial court, except in so far as a presumption in support of such conclusions is derived from the opportunity which the trial judge has of seeing and hearing the witnesses, and of judging their candor, their knowledge of the facts, their intelligence, and bias, or partiality, if any is exhibited.

2. **Surface Water, Diversion of.** Where water, be it surface water, the result of rain or snow, or the water of springs, flows in a well-defined course, be it ditch or swale or draw in its primitive condi-

tion, and seeks its discharge in a neighboring stream, its flow
cannot be arrested or interfered with by a landowner to the
injury of the neighboring proprietors, and what a private pro-
prietor may not do neither can the public authorities, except in
the exercise of the right of eminent domain.

3. Roads: CONSTRUCTION: DAMAGES: PRESUMPTION. The court will
not presume that the commissioners appointed to assess damages
to the owners of land over which it runs, considered it necessary,
in the proper construction of the road, to divert the water, nat-
urally seeking an outlet in a draw, and conduct it in an artificial
ditch along the highway for a mile or more and there discharge
it in such manner that it damaged the land of the plaintiff, or
that plaintiff was allowed damage for such disposition of the
water.

4. An easement by prescription can be acquired only by an adverse
user for ten years, and the commencement of the time required
for the prescription to ripen dates from the time when the party
was damaged or had a cause of action arising from the adverse
user.

APPEAL from the district court for Howard county:
JOHN R. HANNA, JUDGE. *Affirmed.*

*Frank J. Taylor* and *T. T. Bell,* for appellants.

*A. A. Kendall* and *W. H. Thompson, contra.*

DUFFIE, C.

The decree of the district court contains findings upon
all the issues made by the pleadings with an exception
hereinafter referred to. These findings, together with a
plat of the surrounding country introduced by the plaintiff
present the matter in dispute between the parties in as
brief and clear a manner as any synopsis of the pleadings
which we could make. After a general finding for the
plaintiff the decree continues as follows:

"The court further finds that at the time this action was
commenced and previously thereto the plaintiff was a resi-
dent taxpayer of the said county of Howard, and was the
owner and in possession of the southeast quarter of sec-
tion 32 and the northwest quarter of section 33, and that

Miles Carter was the owner and in possession of the south-
west quarter of 33, all in township 14 north, of range 10

west, in said county. The court finds that at the said
times, A. L. Warne was the owner and in possession of
the northwest quarter and the south half of the southwest

quarter of section 4, and that J. M. Martin was the owner
and in possesion of the southeast quarter of section 5,
all in township 13 north, of range 10 west, in said county.
The court finds that sections 4, 8, 9, 16 and 17, in said
township 13, are low, flat and nearly level lands, and are
wet and swampy during a great portion of the year, and
that a large amount of surface and seepage waters collect
thereon and flow therefrom.  The court finds that said
surface and seepage waters, by the processes of nature,
formed and gathered into a draw or a low drain and water-
course known as the 'Warne draw,' which watercourse
runs in a northeasterly course or direction from the land
of said Martin into the public road running north and
south between sections 4 and 5, and in an easterly direc-
tion across said road, and then in a northeasterly direction
across the lands of said Warne and one George Gans, who
owns the north half of the southwest quarter of section
4, lying between the two tracts of the said Warne, thence
on across lands of the said Warne, and across the lands
of the said Carter, and several miles to the Loup river.
That the said draw or watercourse is deeper than the
surrounding lands, and has well-defined banks and an
open course in some places, and is fed by springs, and the
surface and seepage waters from sections 8, 9, 16 and
17 aforesaid, and that said waters have constantly flowed
in said draw and watercourse for many years, and that
said draw and watercourse is the only natural course and
outlet for said waters, and that said northeasterly direc-
tion is the only natural direction for said waters to flow
and the only direction that they did flow previous to the
acts complained of by plaintiff, and that said waters
never did flow down said road in a northerly direction, nor
at the place or in the place where the same now flow,
previous to the acts complained of by the plaintiff.  The
court finds that after the road between sections 4 and 5
and 32 and 33 was opened to public travel, and, to wit,
in the year 1887, a culvert was built by said county across
said road at the point where said Warne draw and water-

course crosses said road, to enable the waters coming down said draw to pass thereunder and provide a safe crossing for the public over said draw, and that the dirt was taken from the sides of the road near said culvert to grade the approaches to said culvert, and that thereafter, in the year 1893, said culvert was washed out by the waters coming down said draw and was swept to the east side of the road, and said watercourse became filled up where it crossed said road and remained so until the year 1897, when the proper authorities of said county ordered it opened, and a new culvert built; that said new culvert was built during said year last mentioned, being 16 feet in length, and about 8 feet wide, and $3\frac{1}{2}$ feet high, to enable water to pass thereunder, and more dirt was taken from the sides of the road to grade the approaches to said culvert, thereby making ditches at the sides of the road for a short distance from said culvert. The court finds that in the year 1891 the said A. L. Warne opened a ditch along the west side of said road, running north and south between sections 4 and 5 and 32 and 33; that the southern terminus of said ditch, so constructed, was at the west end of said culvert constructed across said Warne draw as aforesaid, and that the northern terminus of said ditch, so constructed, was about 25 rods south of the quarter section corner between said sections 32 and 33, and that said Warne worked on said ditch from time to time during several years thereafter; and that said work was without authority and not authorized by the properly constituted authorities of said county, and was constructed for the purpose of draining the water coming down said Warne draw from said Warne's land and carrying it north in said ditch, along said road, to the northern terminus of said ditch, where it was discharged in said road, and from there it went onto the land of Miles Carter, and from there onto the land of the plaintiff in section 33; that, in passing down said ditch, the same overflowed and went upon the land of the plaintiff in section 32 continuously and in large quantities in the year 1903, to the damage of

plaintiff's crops growing on said land. The court finds that in the year 1899 and thereafter the county authorities of said county assumed control of said ditch, excavating and greatly enlarging the same, and made use of said ditch to convey the waters coming down said draw in a northerly direction, and thereby changed the course and direction of the water from its natural course, and that said authorities thereby permitted said water to be discharged into the public road, there to pass onto the lands of plaintiff to his damage. The court finds that previous to the commencement of this action plaintiff notified and requested the defendant Lauritsen, road supervisor, and other defendants as county commissioners, to fill up said ditch and stop the flow of water upon plaintiff's land, which request was not granted. The court finds that the natural and only course for said water to flow is across the road in an easterly direction at the culvert, and thence in a northeasterly direction, across the lands of said Gans and Warne, and not in a northerly direction along the public road, and that the action of said Warne and of the said defendants in constructing and extending said ditch, and continuing and maintaining same so as to divert said water from its natural course and cast it into the public highway and upon the lands of plaintiff, was and is wrong and unlawful, and was not made and is not maintained for the purpose of properly and lawfully constructing and maintaining said public road, but was and is for the purpose of draining said waters from the lands east of said road, and that the money expended from the public funds of said county for said purpose is an improper and unlawful use of the public funds of said county and is unlawful. The court finds that, in the construction of said ditch as aforesaid, on the west of said road from said "Warne draw" north to a point about 25 rods south from the quarter section corner between said sections 32 and 33, which was the north terminus of said ditch, it was constructed through a ridge or slight elevation of land which is located at or about the northeast corner of the southeast quarter

of said section 5, and that, in order to permit said water to flow down said ditch, it was necessary to dig said ditch, at said last mentioned point, about 4 feet deep, and that, at said last mentioned point, the natural level of the land was about 3 feet higher than the natural level of the base of said "Warne draw" where it crossed said road, and from which point said ditch was constructed, and that from this northeast corner of the southeast quarter of said section 5 north on the line of said ditch the natural flow, drainage and flow of the water was in a northern direction toward Lake Creek draw, and that from this last mentioned point south the natural drainage and flow of the water was in a southern and southeastern direction toward said 'Warne draw.'

"The court finds that the plaintiff has sustained damage in the sum of $30, and that the injunction heretofore granted in this case should be and the same is hereby sustained, and the defendant, county of Howard, and the defendants, Frank Rork, George Irvine and S. M. Sonderup, county commissioners of said county, and their successors in office, and the defendant, Hans N. Lauritsen, road supervisor of Cleveland precinct in said county, and his successors in office, are each and all, individually and collectively, perpetually enjoined and restrained from allowing or permitting any water coming down said 'Warne draw' from above, or south of the culvert across said draw in the road between sections 4 and 5 in said township and range, to flow down said ditch north of said 'Warne draw' on the west side of said road between said sections or upon plaintiff's land in said sections 32 and 33 as aforesaid.

"It is further considered and ordered that the said defendants, and their successors in office, shall cause said ditch on the west side of the road running north between sections 4 and 5 to be filled up at such points or places north on said culvert over said 'Warne draw,' at or near to the northeast corner of the southeast quarter of said section 5, as shall effectively and permanently prevent any

water coming down said ditch, or from the road, from pass-
ing down said ditch to the north, and such filling shall
be permanent and lasting, and of such character as to be
effective, and the ground to be replaced therein in a
natural and substantial condition, the same as it was be-
fore said ditch was first constructed, and such as will re-
store the water in this locality to its natural course, and
that such excavations shall be made under said culvert
constructed across the 'Warne draw' as shall make the
bottom of said culvert as low as or lower than the base
of the ditch located west thereof in said road, so as to
permit the water flowing and accumulating in said ditch
to pass through said culvert on the east thereof, and to
make such other and further excavations at said point as
will enable said water coming down said draw to pass to
the eastward under said culvert, and out of the said road
through the natural course of said 'Warne draw' onto the
lands of the said Warne and Gans."

The appellants insist that the decree is not supported
by the evidence, and from that fact alone it should be re-
versed.   We concede the claim made by appellants that,
under the statute and the holding of this court in *Faulk-
ner v. Simms*, 68 Neb. 299, it is our duty to examine the
evidence and arrive at an independent judgment relating
to the facts established therefrom, but, as well stated in
that case, the trial court has advantages denied to the ap-
pellate court in many particulars where the witnesses are
orally examined upon the trial.   Where the testimony of
witnesses is taken in the form of depositions and consists
wholly of written evidence, the appellate court is as well
qualified to judge of the credit and force to be given the
evidence as the trial court, but it cannot be disputed that
the apparent candor, knowledge and intelligence of the
witnesses are matters of which the trial court has a bet-
ter opportunity to judge than can we from a reading of
the cold written record brought before us.   To that extent,
but no further, there should be a presumption in favor
of the findings of the trial court.   These are matters which

we cannot overlook, and which to some extent should go to support the findings, unless a careful consideration of all the evidence convinces us that there is a preponderance against such findings. The matter is one of importance, not only to the parties, but to the state at large, and we have tried to give it the full consideration that it demands.

We are satisfied that what is known as the "Warne draw" is the outlet for the surface water received on quite an extent of country lying south of the bridge crossing that draw and where the ditch complained of commences. The rule relating to gathering surface water in a ditch and discharging it in a volume on the lands of another has been well settled in this state. While one may fight surface water and protect his premises against it by the use of reasonable means, he cannot collect it in a large body and flow it onto the land of a lower proprietor to his injury. *Todd v. York County,* 72 Neb. 207, and cases there cited. In *Chicago, R. I. & P. R. Co. v. Shaw,* 63 Neb. 380, it is said:

"It would be an unfortunate rule of law which would allow a railroad company, or any other proprietor of land, to erect an embankment across a ravine in which a large body of water is accustomed to run during the rainy seasons or upon the melting of snow without making the necessary provision for its flow in the usual manner. * * * We regard it as now settled by the former decisions of this court that a railway company, or other proprietor of land, cannot throw an embankment across a ravine or draw, into and through which the surface water of a large scope of country is accustomed to flow, without providing adequate means for the usual flowage of the water naturally seeking such an outlet."

This case was referred to and followed in *Missouri P. R. Co. v. Hemingway,* 63 Neb. 610, and the law is now apparently well established that, when surface water flows by a well-defined and natural course upon lower lands, that flow cannot be interfered with by either the upper or

lower proprietor. *Wharton v. Stevens,* 84 Ia. 107. In that case it is said:

"But where surface water has a fixed and certain course as a swale, though it may be narrow or broad, its flow cannot be interrupted to the injury of an adjoining proprietor."

In this case the finding of the court, which we think well supported by the evidence, is as follows: "That the said draw or watercourse is deeper than the surrounding lands, and has well-defined banks and an open course in some places, and is fed by springs, and the surface and seepage waters from sections 8, 9, 16 and 17 aforesaid, and that said waters have constantly flowed in that draw and watercourse for many years, and that said draw and watercourse is the only natural course and outlet for said waters."

It is well settled that what would be illegal in the disposition of surface or other waters in a private individual, is likewise illegal when attempted by the public authorities, unless by agreement, or in the exercise of the power of eminent domain and by the payment of damages, the public authorities have acquired the right to collect and discharge the water upon the land of another. In *Young v. Commissioners of Highways,* 134 Ill. 569, 25 N. E. 689, it is said:

"The commissioners of highways, where they undertake to drain a public highway, possess the same rights, and are to be governed by the same rules, as adjoining landowners who may undertake to drain their own lands, except where they may be proceeding under the eminent domain laws of the state."

And *Patoka Township v. Hopkins,* 131 Ind. 142, 30 N. E. 896, is to the effect that the public authorities cannot collect in artificial ditches, along the side of the road, surface water which naturally flows away from the road, and by a culvert conduct it all on one side, thereby causing it to be thrown on the land of a proprietor on that side. In *Churchill v. Beethe,* 48 Neb. 88, the complaint was that

the authorities raised an embankment along the highway in such a manner as to change the course of surface water accumulating on the land west of the highway so as to cause it to flow upon the land of the plaintiff, whereas, before the embankment was constructed, such water flowed over the land north of plaintiff's; and second, that the defendants were about to build a culvert across the highway in such a manner as to turn the accumulated surface water from the land to the west in a body upon the plaintiff's land. Relating to the second cause of complaint the court said: "It is needless to say that such an act by a private proprietor would be unlawful, and that relief could be had against it." And it then proceeds to show that, under the circumstances of that case, it must be presumed that the plaintiff had received, or had an opportunity to receive, compensation for his damages when the highway was originally constructed; in other words, that the necessity for this work and the damages to plaintiff arising therefrom had been taken into account by the commissioners appointed to assess his damages when the road was opened. The case clearly recognizes the rule that the public authorities have no greater rights than a private proprietor to collect and discharge water upon the land of another, except in cases where the damages to that other have been ascertained and paid, or where the opportunity has been offered him to claim his damages on the construction of the improvement and he has neglected to do so.

In this state all section lines are made public highways, and, when opened, damages are assessed in favor of adjoining proprietors for any injury that may be done their premises from the proper construction and maintenance of the highway. It is undoubtedly true that the plaintiff in this case has been awarded the damages sustained for the opening of the highway across his land, or which might accrue to his premises in consequence of any necessary work done in the proper construction and maintenance thereof, but it cannot, we think, with any degree of reason, be claimed that the commissioners appointed to assess

the damages for the opening of this highway conceived it to be necessary to take the water from the "Warne draw," and conduct it north along the highway and discharge it into the road and upon the lands of the plaintiff, as has been done in this case. It would be unreasonable to suppose that any commission appointed to award damages could believe that such disposition of the water was either necessary, or would be attempted, in the proper construction of the highway, and the court has specially found that constructing and extending the ditch complained of was not done, and that the ditch is not maintained, for the purpose of properly and lawfully constructing and maintaining said public road, but was for the purpose of draining said waters from the lands east of said road.

The appellants' claim of an easement acquired to discharge water upon the plaintiff's land cannot be sustained. An easement by prescription can be acquired only by an adverse user for ten years (*Omaha & R. V. R. Co. v. Rickards*, 38 Neb. 847) ; and in cases of this character the prescriptive right will not commence to run until some act or fact exists giving the party against whom the right is claimed a cause of action. Where a right by prescription to maintain a railroad bridge, and change the current of a stream and injure the land of a riparian owner below, by causing it to wash away his land, is claimed, the commencement of the time required for the prescription to ripen is not from the erection of the bridge, but from the first actual damage to the land consequent on the erection of the bridge. *Eells v. Chesapeake & O. R. Co.*, 49 W. Va. 65.

There is no evidence in the record that the plaintiff or those from whom he acquired title to the land were damaged, or acquired any cause of action in consequence of water discharged upon their land from this ditch, and no evidence that water from the ditch reached the land, for a period of ten years prior to the commencement of the action. On the whole case we think that the finding of the district court is well sustained by the evidence, and

that the law entitles the plaintiff to the relief afforded by the decree, and we therefore recommend its affirmance.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.