J. WARREN KEIFER, JR., APPELLEE, V. ARCHIBALD M. SHAMBAUGH, APPELLANT.

FILED APRIL 15, 1916.   No. 18843.

1. **Waters**: DIVERSION: ADJOINING LANDOWNERS.  A landowner may not rightfully collect and divert either waters of a watercourse or surface waters and discharge them onto the land of his neighbor to the latter's damage.

2. ———: ———: INJUNCTION.  It is the plaintiff's right to occupy and use his land for such lawful purposes as he sees fit, and unincumbered by an overflow of surface water or water in a watercourse, accumulated, arrested and discharged in a body, by the owner or occupant of adjoining land; and for the protection of such right injunction will lie.

APPEAL from the district court for Nuckolls county: LESLIE G. HURD, JUDGE. *Affirmed.*

*L. H. Blackledge,* for appellant.

*Buck, Brubaker & Buck,* contra.

HAMER, J.

The plaintiff and appellee, J. Warren Keifer, Jr., owns a farm in Nuckolls county adjoining a farm owned by the defendant and appellant, Archibald M. Shambaugh. Oak creek, a natural watercourse, runs across the defendant's farm. The defendant constructed a dam across Oak creek, and a dyke which extends therefrom obstructs this watercourse and discharges the waters thereof, together with surface waters collected thereby, in a body upon and across the adjacent farm of the plaintiff. The waters diverted cause continuing damage to the land of the plaintiff by destroying the crops which would otherwise be raised thereon. Because of this destruction, the plaintiff appears to be without a remedy at law. The defendant, from time to time, repairs and maintains said dam and said dyke, and for the sole purpose of obstructing and diverting the waters of said stream and causing them to be discharged upon the farm lands of the plaintiff, and against the plaintiff's repeated objections and protests, and without obtaining his consent in any way. The plaintiff claims that the evidence is sufficient to entitle him to a decree for an injunction. The defendant has pleaded an alleged oral agreement with the plaintiff under which he claims that he has a right to so divert said waters. This agreement is denied in the reply. It is claimed by the plaintiff that the agreement set out by the defendant is not proved to be the agreement made, and that said agreement, as alleged in said answer, is only a part of the agreement made, the other part of which the defendant repudiates and denies. It is claimed by the plaintiff that the agreement which is alleged by the defendant fails to give to the defendant the right to flood the plaintiff's land or to discharge said water thereon. Dis-

charging said water on the plaintiff's land is the real wrong of which the plaintiff complains. It is the wrong admitted to be remedied by the decree entered in the trial court.

There was an amendment made to the petition at the trial and by reason of the suggestion of the court. It was filed as complained of in the defendant's brief. The substance of the amendment was, and is: (a) That in the fall of 1903 T. M. Shambaugh, the father of the defendant, who was then the owner of the defendant's farm, to wit, the northwest quarter of section 27, township 1, range 8, agreed with plaintiff that, if plaintiff would furnish land at the west side of his farm for a drainage ditch, he (Shambaugh) would construct, maintain and keep up ditches and dykes sufficient to carry the combined waters of Oak creek and Dry creek through said ditch, and would thus prevent any of said waters from flowing across onto the plaintiff's lands to the east of said dyke so to be built on the east of said drainage ditch. (b) Said drainage ditch and dyke and dam were constructed pursuant to said agreement, and were not completed until May, 1904, and they were first used in July of said year. (c) Said agreement was oral and permissive only, and was expressly conditioned upon the defendant keeping up and repairing the said dykes. (d) The defendant refuses to repair the dykes on plaintiff's land, but maintains and repairs the dam and dyke on his own land, so as thereby to throw said waters across the farm lands of the plaintiff, to his irreparable injury, and in violation of the express condition upon which said dam and dykes were to be built and used.

The amendment does not appear to be necessary, because it did not change the issues, and does not make admissible in evidence that which was before inadmissible, nor did it state any new or different cause of action, nor did it vary the remedy originally sought. The wrongful and unlawful diversion from their natural course of the flowage of the waters in Oak creek, together with the surface waters, by means of said dam and dyke on defendant's land, there-

by causes such waters to be discharged on the plaintiff's adjacent lands, and this is the wrong of which the plaintiff complains. After the amendment it still remains the distinct wrong.

J. Warren Keifer, Jr., testified that the plaintiff owns the east half and the defendant the west half of section 27, township 1, range 8. Dry creek, a draw carrying water only in wet times, comes from Kansas northward through the bluffs on plaintiff's land about 250 or 300 yards west of section 27, whence it originally spread its waters northward across plaintiff's land. Oak creek comes northward through the bluffs on plaintiff's land about 250 or 300 yards west of the plaintiff's east line, and thence runs in a northerly direction in a well-defined channel from 4 to 10 feet deep, with natural timber along its course, passing between defendant's house and barn, and continuing clear across defendant's north eighty, and nowhere touching plaintiff's west line. The land along plaintiff's west line east of Oak creek is higher than the land west of Oak creek, and the overflowing waters from Oak creek originally flowed out west of the creek. Oak creek is larger than Dry creek, and drains a more extensive territory and carries more water.

In the fall of 1903, and the late spring of 1904, T. M. Shambaugh built a dyke or dam across Oak creek, and a ditch and dyke running eastward therefrom to a ditch which is built northward on the west part of plaintiff's land, and also a ditch and dyke from the south end of said north and south ditch in a southeasterly direction to the bluff at the east side of the mouth of Dry creek. Before the building of said dykes and ditches no part of the waters of Oak creek came upon plaintiff's land from the west, and said dykes and ditches diverted all of said waters toward plaintiff's land; and, because of defendant's failure to keep up the dykes on plaintiff's side of the ditch, said waters flowed over and now flow over and run across the plaintiff's said farm lands.

On cross-examination J. Warren Keifer, Jr., testified touching the agreement as follows: There was talk about between Shambaugh and plaintiff of making a joint ditch, but the arrangement was finally made that the ditch should be constructed on the plaintiff's side of the line by Mr. Shambaugh bearing all the expense and keeping it up. Shambaugh was to do all the work and keep up the ditch. Keifer testified that he was quite sure that it was a part of the bargain that Shambaugh was to keep up the ditch.

Arthur Stanley testified that it was stated at the time that the ditch was to run west to where Oak creek crossed the road to go north, and that Mr. Shambaugh suggested that the ditch should run south and west to catch the waters of Oak creek at the bluff, and that he (Shambaugh) would do the work if Mr. Keifer would furnish the land, and he would also keep up the ditch. Stanley was sure that Shambaugh so stated, and was also sure that the ditch was afterwards dug in the manner that was that day proposed.

Stanley Sutherland testified that he heard Shambaugh say that he had agreed to maintain the ditch and dyke. This was in the presence of J. P. Hostick. J. P. Hostick himself testified to the conversation with Shambaugh in the presence of Stanley Sutherland, and that Shambaugh said that he had agreed to maintain the ditch and dyke, or words to that effect.

On rebuttal, J. Warren Keifer, Jr., testified that the matter was talked over a good deal, and that the final agreement was that he (Keifer) was to furnish the land for the ditch, and that Shambaugh was to do all the work and was to maintain the ditch, and the two creeks were to be thrown together, as was afterwards done, and that the defendant failed and refused to maintain the ditch and dyke on the plaintiff's land.

The defendant on cross-examination testified that he did not have any intention of repairing the ditch and the dyke: "A.  No, sir; not a bit.  Q.  And you don't have

yet? A. No, sir." But nevertheless the defendant was keeping up and raising the dam and dyke on his own land so as to dam up and divert Oak creek. He testified: "A. I have repaired it; I put approximately a day's work on that dyke I guess every year I have been there."

Oak creek, which is being diverted across plaintiff's land, has a well-defined channel. It is a natural drainage channel. The dam and dykes which divert Oak creek and part of the ditches were not constructed until the spring of 1904, less than 10 years before the commencement of this action. T. M. Shambaugh testified: "Well, the Keifer side was finished that fall. We didn't get all through with my side on Oak creek until the spring. We had to throw up a levee there; that is the reason that it washed out so bad there, because it was loose dirt." Arthur Stanley testified that the ditches were not all built until the spring of 1904.

The evidence clearly establishes a continuing and irreparable injury. The judgment of the court is within the issues of the case as made on the original pleadings. The petition alleges the wrongful diversion of the waters of a natural watercourse to and across the farm lands of the plaintiff, to the destruction of his crops and the injury of the soil. The answer denies generally the said allegations, and pleads as a matter of defense an agreement under which the defendant asserts a right to divert said waters into a ditch on plaintiff's land. And the reply to said new matter, being a general denial, puts in issue, not only the making of such an agreement, but the form and substance in the agreement. Under the issues the plaintiff was entitled to prove whether or not an agreement was made and the exact nature of the agreement. The answer having set up new matter, namely, an alleged agreement which was denied in the reply, the burden was on the defendant to prove the very agreement alleged. *Williams v. Evans*, 6 Neb. 216.

If the amendment was necessary to conform the pleadings to the facts proved, it must be presumed that the court allowed such amendment in the furtherance of justice, and that such action was without prejudice. We are unable to see that the defendant was prejudiced in any way by the amendment.

In *German Ins. Co. v. Frederick,* 57 Neb. 538, the plaintiff after the trial was permitted to amend the petition and reply so as to admit that the premises were vacant. It was held that there was no error in this. It was said: "The evidence had gone in on this issue without objection based on its irrelevancy, and the amendment was a proper one to conform the pleadings with the proof."

In *Whipple v. Fowler,* 41 Neb. 675, it was held, as stated in the syllabus: "Where, upon the trial of an action, testimony is admitted without objection, it is not error for the court to permit the pleadings to be amended to conform to the proof."

In *Blakeslee v. Van der Slice,* 94 Neb. 153, it was held, as stated in the syllabus: "It is usually a matter within the discretion of the district court to allow or refuse to allow a pleading to be amended to conform to the evidence; and, in order to predicate error in allowing the amendment, it must be shown that the trial court has abused its discretion."

The injury which is complained of is an injury to real estate. It is such an injury as to be the object of equitable cognizance and protection by injunction. *Jacobson v. Van Boening,* 48 Neb. 80.

In the above case it was stated in the syllabus: "Against a continuing injury to land caused by an unlawful discharge of surface waters by an adjoining proprietor, equity will afford relief by injunction."

In *Ayres v. Barnett,* 93 Neb. 350, it is said, among other things, in the syllabus: "An owner of real estate is not required to permit the devastation of his timber land by a trespasser and seek relief in an action at law for damages. He may prevent such trespass by injunction."

The injury is a continuing one, and therefore it presents a proper ground for injunction.

In *Sillasen v. Winterer*, 76 Neb. 52, it was held, as stated in the syllabus: "Concerning simple acts of trespass equity has, in most cases, no jurisdiction, but, if the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted." The cases cited in *Lynch v. Egan*, 67 Neb. 541, *Pohlman v. Evangelical Lutheran Trinity Church*, 60 Neb. 364, and *Peterson v. Hopewell*, 55 Neb. 670, are along the same line.

As the injury went to the destruction of plaintiff's estate, it was an irreparable injury within the meaning of the law relating to injunctions. *Eidemiller Ice Co. v. Guthrie*, 42 Neb. 238.

Because of the frequent recurrence of the injury, the jeopardizing of the value of the inheritance, and the ripening of the period of prescription, and the necessity of a multiplicity of successive suits at law to recover the damages, even if they could be measured and determined, the plaintiff has no adequate remedy at law.

The diversion of a watercourse on plaintiff's farm lands is unlawful. *Nelson v. Wirthele*, 88 Neb. 595; *Kane v. Bowden*, 85 Neb. 347; *Roe v. Howard County*, 75 Neb. 448.

In *Nelson v. Wirthele, supra*, the syllabus reads: "A landowner is entitled to an injunction to restrain the erection and maintenance of a dam in an old established drainage channel, partly natural and partly artificial, and the digging of a ditch, where the effect would be to collect and divert waters flowing therein and cast them in a body on his lands, which they would not otherwise reach."

In *Kane v. Bowden, supra*, it was said in the syllabus: "Water flowing in a well-defined watercourse, whether swale or creek in its primitive condition, may not, except in the exercise of the power of eminent domain, lawfully be diverted and cast upon lands of an adjoin-

ing proprietor where it was not wont to run according to natural drainage.

"A person may not, except in the exercise of the power of eminent domain, lawfully concentrate surface waters and discharge them through an artificial ditch in unusual quantities upon lands of an adjacent owner to his damage."

In the body of that opinion it is said: "The instant case is within the principle announced in *Roe v. Howard County*, 75 Neb. 448, and *Gregory v. Bush*, 64 Mich. 37. That is to say, that water flowing in a well-defined watercourse cannot be lawfully diverted and cast upon the lands of an adjoining proprietor where it was not wont to run in the course of natural drainage, and that a person may not lawfully concentrate surface water and discharge it through an artificial ditch in unusual quantities upon lands of an adjacent owner to his damage."

In *Roe v. Howard County, supra,* it is said in the syllabus: "Where water, be it surface water, the result of rain or snow, or the water of springs, flows in a well-defined course, be it ditch or swale or draw in its primitive condition, and seeks its discharge in a neighboring stream, its flow cannot be arrested or interfered with by a landowner to the injury of the neighboring proprietors, and what a private proprietor may not do neither can the public authorities, except in the exercise of the right of eminent domain."

The instant case is an ordinary case in equity instituted to restrain the defendant from repeating his acts of continuing injury and damage to the plaintiff's lands and crops. T. M. Shambaugh, who built the dam across Oak creek and the dykes and ditches, maintained them during the years he continued to occupy the farm. The son seems to have been unwilling to do what his father had done according to the agreement made. The defendant admitted that he had no intention of protecting the plaintiff by maintaining the dykes that his father had constructed on the plaintiff's land. The defendant *hav-*

*ing abandoned the agreement* which his father made as to maintaining the dyke on the east margin of the artificial ditch on the land of the plaintiff, while still repairing and keeping up the dam across Oak creek and the dykes leading therefrom to the plaintiff's land, disregarded the rule of law to the effect that a landowner cannot collect and divert either the waters of a watercourse or surface waters and discharge them onto the land of his neighbor, to the neighbor's damage.

"The owner of a natural pond or reservoir wherein the surface water from the surrounding land accumulates, and from which it has no means of escape except by evaporation or percolation, cannot lawfully, by means of a ditch, discharge such water upon the land of his neighbor, to his injury." *Davis v. Londgreen,* 8 Neb. 43. In that case it is said in the body of the opinion: "Now, it is certain that the plaintiff has the absolute right to occupy and use his land for such lawful purpose as he sees fit, unincumbered by the periodical floodings complained of. And this is one of those substantial rights incident to the property itself, to protect which an injunction will always be granted. * * * A correct test for determining whether an injunction is the appropriate remedy was given, we think, by the supreme court of Wisconsin, in *Pettigrew v. Village of Evansville,* 25 Wis. 223, wherein the threatened nuisance was essentially the same as that committed by the defendant here."

The judgment of the district court is right, and it is

AFFIRMED.

LETTON, J., concurs in the conclusion.

SEDGWICK, J., not sitting.