JOHN H. COSTELLO ET AL., APPELLANTS, V. COLFAX COUNTY ET AL., APPELLEES.

FILED APRIL 10, 1924.    No. 23798.

**Drains:** DIVERSION OF WATERS: INJUNCTION. Where the construction of a drainage ditch, pursuant to the provisions of article I, ch. 17 (sections 1665-1702) Comp. St. 1922, would divert the waters from one flowing stream into another, which would cause the waters of the latter stream to overflow its banks and flood the lands of lower riparian owners, injunction will lie, at the instance of such owners, to prevent the construction of the ditch until a time has been fixed for hearing their claims for damages and due notice of such hearing has been given them, to the end that they may have the opportunity of having their claims for damages duly presented and determined.

APPEAL from the district court for Colfax county: FREDERICK W. BUTTON, JUDGE. *Reversed.*

*Cain & Johnson,* for appellants.

*George W. Wertz* and *B. F. Farrell,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and GOOD, JJ.

GOOD, J.

This is an action to enjoin the construction of a drainage ditch, in Colfax county, Nebraska, which would divert the waters of Dry creek into Maple creek, on the ground that the increased flow of water in Maple creek would cause it to overflow and flood plaintiffs' lands to their damage, with-

Costello v. Colfax County.

out provision having been made for compensating them. Plaintiffs' lands are in the valley of, and below the point where the diverted waters would enter, Maple creek. Defendants are the county of Colfax, the county clerk and county commissioners of said county, and the petitioners for the drainage ditch. They intend to construct the ditch pursuant to the provisions of article I, ch. 17, Comp. St. 1922, and had taken preliminary steps for its construction when this action was begun. Defendants admit that they intend to construct the drainage ditch and have not given plaintiffs any notice of a hearing on claims for damages; that no provision has been made for compensating plaintiffs for any damages they may sustain, and that defendants do not intend to make any provision for compensation, and claim that if plaintiffs suffer any damage it is *damnum absque injuria* and is not compensable. The trial court found for defendants and entered a decree accordingly. Plaintiffs appeal.

The following pertinent facts are shown without substantial dispute: Dry creek flows into Maple creek in Colfax county, Nebraska, and for several miles above their confluence the two streams run nearly parallel. The intervening valley varies from a half mile to a mile and a half in width. Most of the land in this valley is lower than the banks of either stream. In times of freshet and high water, Dry creek overflows its banks at various places, but particularly at and above the point where the proposed drainage ditch is to tap that stream. The greater part of this overflow water never returns to the creek from which it emerges, but spreads over the valley and runs over the lands of the petitioners into another drainage ditch and ravine, and thence into Maple creek at the place where the proposed drainage ditch would enter that stream. The length of the proposed drainage ditch is approximately five miles. On at least four or five occasions within the past 40 years, both creeks have simultaneously overflowed their banks and inundated the valley to such an extent as to entirely destroy or greatly damage the crops growing on the

lands of both plaintiffs and such of the defendants as are petitioners for the ditch.

It is shown that Maple creek, just below the point where the drainage ditch would enter it, is frequently taxed to its full capacity; that on an average of four or five times a year the stream at that point runs bank-full, and that a small increase in the volume of its waters would cause it to overflow its banks. The volume of water in Dry creek is equal to about one-third to one-half the volume of water in Maple creek, and it clearly appears that the drainage ditch, if constructed, would so increase the flow of water in Maple creek as to cause it to overflow its banks, and that plaintiffs' lands would be flooded several times in the course of a year, while, under present conditions, they are not flooded oftener than on an average of once in eight or ten years.

The trial court decided the case apparently upon the theory that the defendants had complied with the statutory provisions relative to the construction of such a drainage ditch; that the statute did not require notice to any persons except those whose lands would be benefited by the improvement, and that, the county board having pursued the course prescribed by the letter of the statute, injunction would not lie. The court also seems to have adopted the view that, since the overflow waters of Dry creek never return to it, they become surface waters, and that the contemplated drainage ditch would carry only surface waters; that the defendants had a right to collect these waters and accelerate their flow into Maple creek where they were wont to flow, and that the lower riparian owners along Maple creek could not complain of such acts.

We think the district court erred in assuming that the proposed drainage ditch would carry only surface waters. It will be conceded that the overflow waters of Dry creek which spread over the valley and never re-enter that stream become surface waters. However, the evidence shows that the bottom of the drainage ditch where it would tap Dry creek is only 12 inches higher than the bottom of that stream. Dry creek at that point is 8 feet deep, and the

waters of that creek running more than 12 inches deep will
flow, in part at least, into the drainage ditch. It is also
evident that, because of the decreased flow of water in Dry
creek below the point to be tapped by the ditch, it would fill
up and in a short time practically all the waters of Dry
creek would be forced into and carried by the drainage
ditch, and thereby all the waters of that creek would be di-
verted into Maple creek. If the proposed ditch would not
divert the waters that naturally flow within the banks of
Dry creek but would carry only surface waters and dis-
charge them into Maple creek at a point where they would
naturally flow, then plaintiffs could not justly complain.
As lower riparian owners, their lands must bear the burden
of surface waters that come upon them in their natural
course, even though the flow thereof has been greatly ac-
celerated by artificial means.

The law does not require the plaintiffs to bear the burden
of water diverted from the natural flow of one stream and
discharged into another stream, thereby causing the latter
to overflow its banks and flood their lands. *Pyle v. Rich-
ards,* 17 Neb. 180; *Kane v. Bowden,* 85 Neb. 347; *Nelson v.
Wirthele,* 88 Neb. 595; *Keifer v. Shambaugh,* 99 Neb. 709;
*Keifer v. Stanley,* 111 Neb. 822; *Roe v. Howard County,* 75
Neb. 448. In the latter case it is held: "Where water, be it
surface water, the result of rain or snow, or the water of
springs, flows in a well-defined course, be it ditch or swale
or draw in its primitive condition, and seeks its discharge
in a neighboring stream, its flow cannot be arrested or in-
terfered with by a landowner to the injury of the neighbor-
ing proprietors, and what a private proprietor may not do
neither can the public authorities, except in the exercise of
the right of eminent domain."

Under this authority the defendants could not lawfully
construct a drainage ditch and divert the waters that natur-
ally flow within the banks of Dry creek and discharge them
into Maple creek and thereby cause the latter to overflow
its banks and flood the plaintiffs' lands to their injury, ex-
cept in the exercise of the right of eminent domain. De-

fendants are not entitled to construct the ditch and thereby take and damage the lands of the plaintiffs, without compensation having first been made or provided for.

This court has held that in establishing a drainage ditch pursuant to the provisions of article I, ch. 89, Comp. St. 1899, which now appears as article I, ch. 17, Comp. St. 1922, among the jurisdictional steps required to be observed is "that notice, as provided by statute, to persons on whose lands the cost is to be apportioned, and the owners whose lands are to be taken or damaged, shall be given." *Dodge County v. Acom*, 61 Neb. 376; *Darst v. Griffin*, 31 Neb. 668; *Morris v. Washington County*, 72 Neb. 174.

It follows that the judgment of the district court should be and is reversed, and the defendants are enjoined from proceeding with the construction of the proposed drainage ditch until a time is fixed for the hearing of plaintiffs' claims for damages, and they are given due notice of such hearing, so that their claims may be heard and determined.

REVERSED.

Note—See Drains, 19 C. J. p. 683, sec. 153.