FREEMAN, Respondent, vs. CITY OF LAKE MILLS, Appellant.

*September 15—October 12, 1943.*

538

H. A. *Schmidt* of Lake Mills, for the appellant.

For the respondent there was a brief by *Grady & Dakin* of Watertown, and oral argument by *H. M. Dakin*.

FAIRCHILD, J. The point first to be considered is as to whether any liability rests upon the appellant for using Rock creek in the way it does as an outlet for its surface waters. It must be conceded that the appellant, a city, has the same right with reference to surface waters as an individual would have, although the rule is usually phrased to read that the municipality has no greater rights than the individual. *Hoyt v. Hudson* (1871), 27 Wis. 656. This rule has been recognized in Wisconsin as well as in other states. *Roe v. Howard County* (1906), 75 Neb. 448, 106 N. W. 587; *Pettigrew v. Evansville* (1870), 25 Wis. 223; *Jordan v. Benwood* (1896), 42 W. Va. 312, 26 S. E. 266. In *Manteufel v. Wetzel* (1907), 133 Wis. 619, 622, 114 N. W. 91, the doctrine applicable to the case at bar was outlined. In that case, as in this, the one in position of upper proprietor caused surface water to flow in its natural direction so as to get it off his land, and although an annoyance to the adjacent owner, no resulting liability rested upon the upper proprietor for damages, nor was a nuisance created. In the *Manteufel Case*, after considering many of the cases in which similar questions had arisen, the court determined "that where the upper proprietor does no more than collect in a ditch, which ditch follows the course of the usual flow of surface water, the surface waters which formerly took the same course toward

the land of the lower adjacent proprietor, and causes to pass through this ditch the surface water which formerly took the same course but spread out over the surface, he has committed no actionable legal wrong of which the lower proprietor can complain, or upon which such lower proprietor can maintain an action."

The evidence does not show and the trial court did not find the tapping of a new watershed by the city when it substituted drain pipes for the old ditch or that it added to the drainage area as it had always existed. The rights of the interested parties were not changed merely because the city grew and the storm-sewer system became more practical than the open ditch.

The finding of the trial court that the city permitted a large amount of debris to accumulate and be deposited in the creek bed is not supported by any evidence that the appellant has purposely or negligently invaded any legal right of the respondent. The substance of the filling claimed to raise the creek bed is what would naturally be there if movement down stream of the incoming surface water was interrupted. Some dirt necessarily deposited upon the streets would be carried into the creek and there would be a settling in the bottom of the creek, but as said in *A. L. Lakey Co. v. Kalamazoo* (1904), 138 Mich. 644, 649, 101 N. W. 841: "The cities and villages in this country are usually situated along the banks of rivers and small streams, into which the water falling upon their paved streets and buildings must be conducted. For the dirt and material thus carried into such streams, the municipalities are not liable to the riparian owners, or to others living in the vicinity. If any such owner is damaged thereby, it is *damnum absque injuria.* Neither does the law impose upon the municipality the duty to keep the bed of the stream at its original depth and width."

There is evidence which suggests the cause or causes of the respondent's difficulties. All, however, tend in the direction

of sources other than the acts of appellant. The removal of the narrow culvert, placed originally, perhaps unfortunately, by the authorities constructing the fish hatchery, seems to have relieved the respondent's trouble in considerable measure. It is unnecessary to treat the matter further than to say no finding of fact under the evidence can be made that the flooding of respondent's premises resulted from any act or fault on the part of the city. It appears that Rock creek was not used as a place for deposit of refuse by the city. The few business houses that made a freer use of the creek were connected with the sanitary-sewer system before this suit was begun, and the analysis of the bottom of the creek does not show a substance other than what would naturally come by movement of surface waters. Nor is there shown any negligence on the part of the appellant in the control of the overflow of Rock lake into Rock creek. The learned trial judge said: "The proof as to actual damages in this case is somewhat meager and indefinite." This, of course, did not refer to the presence of water in respondent's basement at times; but, while respondent was much annoyed by seepage of water, it does not appear that the market value for sale or the rental value of his premises were affected. The error resulted from placing emphasis upon the misfortune of respondent and not fully according the appellant the benefit of the doctrine set forth in the cases cited.

The trial court was in error in assuming that a liability existed on the part of the city when the established facts showed that the change in the channel of the creek and consequent raising of water was a natural process for which no legal liability can be placed upon the city.

The conclusion of law should have been that the appellant was entitled to judgment dismissing the complaint and judgment accordingly.

*By the Court.*—The judgment of the circuit court is reversed, and cause remanded with directions to enter judgment for the defendant dismissing the plaintiff's complaint.