NINE MILE IRRIGATION DISTRICT, APPELLEE, V. STATE OF NEBRASKA, APPELLANT.

FILED MAY 29, 1929. No. 26775.

*C. A. Sorensen, Attorney General,* and *George W. Ayres,* for appellant.

*Morrow & Morrow, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

DAY, J.

The Nine Mile Irrigation District brought this action to recover damages from the state of Nebraska, sustained by the construction of a bridge across the North Platte river on a county highway in Scotts Bluff county. From a verdict and judgment in favor of the district, the state appeals.

The claim for damages is based upon the proposition that the bridge which was constructed under the provisions of the act providing for state aid (sections 8356-8363, Comp. St. 1922) was so constructed as to divert from its course water in the North Platte river in such a manner that the district was unable to get water into the headgate of its canal, except at great additional expense. The canal was constructed and secured its appropriation of water from the river in 1893. This county road was established on the line in 1900, and in 1901 the first bridge was built

over the river at this point. The bridge is located about one and one-fourth miles above the headgate of the canal. About one-quarter of a mile above the bridge the river divides into a north channel and a south or main channel, with numerous islands dividing the two channels from that point down the river to a point some distance beyond the headgate of the canal. The headgate of the canal takes its water from the north channel of the river. The bridge was constructed over the south channel with fills from both ends, the longest fill being at the north end and entirely obstructing and damming the north channel of the river. In addition to obstructing all flow of water in the north channel, it was constructed in such a way that the heavy current in the south channel was deflected and turned southward at the bridge. About 500 feet below the bridge there was a shallow channel between islands, where water formerly flowed freely into the north channel from the south, but the deflection of the heavy current for the protection of the north fill made it necessary for water to run herein away from the current. It did this in times of high water, but due to lack of current deposited silt, and when the water in the river receded water did not run through, and the north channel was without water from which the irrigation district could get water through its headgate. For seven years the district tried to get water into the north branch by digging this channel deeper at a great and almost prohibitive expense. By also constructing a levee out into the current of the south or main branch they were able to get some, though not sufficient, water into the north channel and thence to their canal. But when the water of the river was high again it washed away the levee and filled the channel with silt and each year it became necessary to repeat the operation. Finally they induced the state engineer to open the fill and permit the water to again run through the north channel of the river. But, as a condition precedent, he required the district to construct a floodgate at the point above the bridge where the river separates to protect the fill in times of flood. It then became

necessary to clean out the old north channel above the fill, which had filled with silt and grown up with brush and other vegetation. The district asks that the state be required to reimburse it for the expense incurred in the construction of the floodgate; for the expense in restoring the old north channel of the river, and for the annual expense incurred from 1921 to 1927, inclusive, in an effort to get water through the channel down stream from the bridge.

This action was brought against the state of Nebraska by authority of a resolution adopted by the house of representatives on February 17, 1927. The resolution contains a recital of the alleged claim against the state and concludes: "Therefore, be it resolved that the said Nine Mile Irrigation District be authorized to sue the state of Nebraska in the district court of Scotts Bluff county for the purpose of ascertaining, determining and obtaining an adjudication of its claim and the liability of the state of Nebraska for the payment thereof." The state contends that this resolution passed by the house of representatives merely waives its immunity from suit. In a recent case we held: "Where the legislature has not by law provided for the recovery by an individual or corporation against the state for damages caused by the negligence of an officer, agent, or employee of the state, there can be no recovery for such negligence until the legislature expressly by law makes the state liable therefor." *Shear v. State,* 117 Neb. 865.

In the able discussion of this question, in that case, it is clearly stated that, where one branch of the legislature by a resolution grants permission to sue the state, the state merely waives its immunity from suit, but such a resolution does not create a new or extend an existing liability. This case was one to recover for the negligence of the officers and agents of the state, while this action is not maintained to recover damages for negligence of any officer, agent, or employee of the state, but rather to recover damages resulting from the wrongful act of the state itself in the construction of said bridge. *Myers v. City of St. Louis,* 82 Mo. 367.

We are not unmindful of the fact that this court has permitted recovery from railroad companies and from counties of damages caused from the obstruction of the flow of water by an embankment, on the theory that construction which interfered with the flow of the water was negligent construction. *Murphy v. Chicago, B. & Q. R. Co.,* 101 Neb. 73; *Chicago, B. & Q. R. Co. v. Emmert,* 53 Neb. 237, and many other cases.

This is a situation where the state and county, by the exercise of eminent domain, without a determination of payment of consequent damages, have obstructed the channel of the Platte river, turning the water away from the headgate of the appellee's canal. If the public welfare, convenience, and necessity required such a change in the course of the stream, it could and should have been accomplished by a proper and legal method. The right to damages in this case flows as a direct consequence of the injury to plaintiff's property for the public use. If private property is to be appropriated to public use, steps must be taken in the manner prescribed by law to appraise the damages and provide for their payment. *Propst v. Cass County,* 51 Neb. 736. This rule has been held to apply to counties and municipalities so often as to be no longer questioned. Neither can the state under its sovereign power take or damage property for public use, without just compensation. It is bound by the same constitutional restriction, and when it does it creates by implication, at least, the obligation to recompense the owners of the property taken or damaged. *Stehr v. Mason City & Ft. D. R. Co.,* 77 Neb. 641. The state had no right to obstruct the flow of the water in the north channel. This method of construction was deliberately planned and stubbornly executed, notwithstanding the protests of the irrigation district. Even now the state insists that, since this bridge is suitable for highway purposes, the state had a right to build it.

Since our Constitution expressly forbids the taking or damaging of private property for a public use, except upon just compensation, the state itself is thus prohibited from

damaging property for public use without compensation. There is, we think, a clear and definite distinction between an action brought and heretofore sustained by our court for negligence in construction and an action brought to recover for damages resulting from the unlawful taking or injuring of property without compensation. The fact that the state is not liable for the negligence of its officers, agents, and employees does not excuse it from liability, where it in the exercise of business functions, as in this case, for the public good damages property without just compensation. Legislative enactment is not necessary to give effect to this section of the Constitution. *Douglas County v. Taylor,* 50 Neb. 535; *Hopper v. Douglas County,* 75 Neb. 329. The owner of property is protected against the appropriation and damage of it for public use, without just compensation, by section 21, art. I, of the Constitution. This protects property rights from invasion by the state as well as the subdivisions of the state and corporations.

This bridge was constructed in 1920 by the state in conjunction with the county of Scotts Bluff, under the authority given by the legislature for the joint construction of such a bridge by the state and a county. The state engineer shall furnish the plans and specifications for such a bridge, and the construction shall be under the joint supervision of the department of public works and the county board. Comp. St. 1922, sec. 8361. The state and county share the cost of said construction. Comp. St. 1922, sec. 8357. All bridges constructed under the provisions of sections 8356-8363, Comp. St. 1922, and commonly known as state aid bridges, are constructed jointly by the county and the state. If the property of the appellee was damaged as a result of the construction of this bridge, the damage resulted from the joint enterprise of the county and the state, and they are each jointly and severally liable for the damage, provided that under the law the state has any liability for such damage. There is no conflict in the evidence but that the bridge was properly constructed for its purpose as a highway. The central proposition in this case is whether the state is liable

for damages resulting from the construction of such a bridge.

The Constitution of this state provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." Const., art. I, sec 21. Is the right to the appropriation of water from the North Platte river property, so that it comes under the constitutional prohibition? In *Southern Nebraska Power Co. v. Taylor,* 109 Neb. 683, this court held: "Where a riparian owner has appropriated water from a stream for power purposes prior to the time the legislature declared the waters in the streams of the state to be the property of the public, the water-right so acquired by such riparian owner is by virtue of the common law." In such case the right to appropriate water is a vested property right. The district appropriated the waters of the North Platte in 1893, or two years before the legislature declared the waters in the stream of the state, not already appropriated, to be the property of the public. The district having appropriated the water under the common law, prior to the legislative dedication to the public, has acquired a vested property right in the use of the water, and such property right cannot be taken away or interfered with, without just compensation, the same being, entitled to protection under the Constitution. *McCook Irrigation & Water Power Co. v. Crews,* 70 Neb. 115.

Again, the canal and the ditches of the district are property, and while it is urged that the state did not injure the tangible property (referring to the canal headgate and ditches), certainly the diversion of the water in the river by the construction of this bridge, to the extent that it was impossible to get water into this canal, damaged the property of the district. An irrigation canal, without water, from a utilitarian view, would be as useless as a "painted ship upon a painted ocean."

But the state urges that this highway, being on a section line, was a potential highway prior to the appropriation of the water from the river. The appropriation of water was

made in 1893, and the highway was opened in 1900. The question is controlled by the decision of this court in *State v. Western Irrigation District Ditch Co.*, 116 Neb. 736, wherein it was said: "Section 2607, Comp. St. 1922, declaring section lines to be public roads and allowing the county authorities to open them to public travel whenever the public good requires it, but upon appraisal and allowance of damages * * * did not of itself create a lawful public highway along such lines, and that, before it can have such effect, the proper authorities must provide for the payment of damages for the right of way. *Van Wanning v. Deeter*, 78 Neb. 282, affirmed on rehearing, 78 Neb. 284."

But the state contends that since the right of way for the highway in question was secured by condemnation proceeding in 1900, all damages resulting from the proper construction of a highway and a bridge were included in the damages allowed in such proceedings. When the highway was opened and the land condemned by right of eminent domain, for the right of way, the only thing compensated for was the taking of the land. No land or property was taken for said highway from the Irrigation District and no compensation was made to it by reason of opening said highway. From 1901, when the first bridge was constructed, which permitted the usual flow of water in the north channel, no damage was suffered by the district until 1919. It was not until then that the state engineer conceived the plan of the present bridge, which provided for a fill or embankment on the north end of the bridge, extending over 900 feet and completely stopping the flow of the water through the north channel of the river  In order to protect this embankment the plan further included a fill built at right angles to it near the bridge to divert the heavy current from the north side to the south side of the river  This also tended to prevent the water flowing through the shallow channel below the bridge, in the north channel of the river, except in times of high water  The property of the district was not damaged by the opening of the road, but was damaged by the con-

struction of this bridge. This damage was not contemplated by anyone, nor was it included in the damages awarded in the condemnation proceeding. The fallacy of this argument becomes apparent when we follow it to a logical conclusion. In the case of *Hofeldt v. Elkhorn Valley Drainage District*, 115 Neb. 539, an action to recover damages for diverting the water of the Platte river so that it overflowed the land of the plaintiff, there was no claim of improper or negligent construction for the purpose of which the dyke was used. The drainage district had secured their right of way either by purchase or condemnation. They had paid for land taken, but this did not relieve them from liability for damages to land not taken. So, also, in the case of *Roe v. Howard County*, 75 Neb. 448, and *Costello v. Colfax County*, 112 Neb. 40. By the acquisition of a right of way for a highway by condemnation proceedings and the award of damages, neither the county nor the state acquired the right to divert the water of a natural stream to the damage of property of the irrigation district. If the rule were as contended by the state, there would be no damage for accumulated waters flooding the land of one who had been compensated for the right of way. Suppose, that, instead of a natural channel of the river running to the headgate of the district's canal, the district had taken their water from a point above the road prior to the opening thereof. Surely it would not be seriously urged that the state in the proper construction of a road, could fill in the ditch where the road crossed it. The district could not have been compelled to build a bridge over the ditch for said road. In *State v. Western Irrigation District Ditch Co.*, 116 Neb. 736, this court held:

"Where an irrigation ditch or canal was established in 1897 across a section line and no public road was actually ordered or established on said line until May 15, 1925, there is no authority given the county, by virtue of the common law or by statute, and particularly by section 2734, Comp. St. 1922, to compel the owners of said ditch or canal to erect and maintain a bridge over said ditch or canal where it crosses said section line."

Yet in this case the state compelled the district by necessity to contribute to the construction of a highway bridge over a natural stream. After seven years spent in a desperate but fruitless effort, at great expense annually, to induce the water to run into the north channel below the bridge, it was demonstrated that the water would not run that way. The state engineer then agreed to make a 30-foot opening in the highway embankment to permit the water to again run through the north channel, but upon condition that the district construct a floodgate at the place where the north channel of the river separates from the south channel. The purpose of the floodgate was to protect the fill the state had put in there. It served no useful purpose in the operation of the irrigation canal. It was in fact a part of the cost of the construction of this bridge, if the bridge was to be constructed with a legal consideration for the rights of others. The cost of the floodgate, the building of which was required by the state engineer as a condition precedent to the state putting in a bridge allowing water to again flow through the north channel, is a proper item to be considered in allowing damages in this case.

We now come to the dominant and determining factor in this case, which may be stated as follows: In such a case as heretofore described, is the state liable for damages resulting from the construction of what is known as a "state aid bridge," under the provisions of sections 8356-8363, Comp. St. 1922? Our Constitution provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." The property of the district was damaged by the act of the state. The state by statute took over full control of the construction of this bridge. This bridge was built under the supervision of the state engineer, and built as planned by him. It was built this way, over the protest of the officers of the district, because the engineer in charge of the work insisted, and still insists, that a normal amount of water could run through the north channel entering it below the bridge. When a branch of the legislature grants one permission to sue the

state, "the court in which such action may be brought shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require." Comp. St. 1922, sec. 1103. Where the state constructs a bridge jointly with a county under the provisions of sections 8356-8363, Comp. St. 1922, which provides, among other things, that the state shall furnish the plans and supervise the construction, it is jointly liable with the county for the damage resulting from said construction, under section 1103, Comp. St. 1922, as a matter of justice and right. What is just and right in this case is determinable from the application to the facts of this case of section 21, art. I, of the Constitution, providing that—"The property of no person shall be taken or damaged for public use without just compensation therefor." *City of Chadron v. State,* 115 Neb. 650. Justice and right demand that the state should compensate for damages to the property of the irrigation district where it was damaged for public use. In *City of Chadron v. State,* 115 Neb. 650, 657, in discussing the liability of the state for interest on the claim for damages as not expressly provided for by statute, the court said: "When the state undertakes business functions, as in this case, and while thus engaged commits a wrong, as it did here, and thereafter the state in a legislative capacity grants leave to the party wronged to sue it and the suit is conducted under a statute (Comp. St. 1922, sec. 1103) directing that the court 'shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require,' we are of the opinion that, if the case, irrespective of the sovereignity and personality of the parties, is such as justly to call for payment of interest, then the state should not be exempted from such payment by reason of its sovereignty."

Applying that rule to this case, right and justice require that the state should pay the cost of the flood control gate built solely for the protection of this bridge; that it should pay for the annual expense from 1921 to 1927, inclusive, of an unsuccessful attempt to provide themselves with sufficient of the water appropriated by them for irrigation purposes; that this case should in all respects be affirmed.

AFFIRMED.

GOOD, J., dissents.

Note—See Eminent Domain, 20 C. J. 645 n. 91, 660 n. 73, 756 n. 2, 1164 n. 28, 1188 n. 30, 1227 n. 38; 10 R. C. L. 165; 4 R. C. L. Supp. 656; 5 R. C.L. Supp. 546; 6 R. C. L. Supp. 602.