CITY OF FAIRBURY, APPELLEE, V. FAIRBURY MILL & ELEVATOR COMPANY, APPELLANT.

FILED JULY 19, 1932. No. 27949.

*John C. Hartigan,* for appellant.

*Frank L. Rain, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Day, J.

This is an appeal from an order of the department of public works, permitting the city of Fairbury to construct certain retards and deflectors in the Little Blue river near Fairbury, Nebraska. The appellant is the Fairbury Mill & Elevator Company, which has dammed and used the water of the Little Blue for more than 58 years, for manufacturing purposes. The city of Fairbury takes water out of the mill-pond about a third of a mile upstream for cooling its turbine engines used in connection with the municipal light and water plant. The city has appropriated 16.7 cubic feet per second of water subject to all prior rights of the mill company to the use of the water. After using the water it is returned to the stream and passes down to the mill-dam. The river now divides into two branches about one half mile above the dam, most of the water running down the south branch of the stream. Prior to 1901, when the south channel was cut by a flood,

all the water of the stream ran down the present north channel. The city takes its water out of the north branch. The branches unite above the mill-dam, which backs its pondage up both branches. The north branch did not carry enough water to supply the city's necessity and it sought to divert enough water into the north branch to meet its requirements. To accomplish this it sought to build a deflector where the stream branches and another at its intake. These furnish the basis of the mill's objections. Another was built at a point to keep the water in the north branch from running between two islands back into the south branch; but, since no objection is made to this deflector, it need not be mentioned again. In order that the situation may be more apparent to the reader, we reproduce a map from the record:

The first proposition advanced by the mill is that the department of public works has not the right or the jurisdiction to impair or interfere with appropriations of water existing under the law previous to 1895. Chapter 69, Laws 1895, dedicated the water of every natural stream, not heretofore appropriated to the use of the people of the state, subject to appropriation. Section 49 specially provided that the act should not interfere with or impair the rights to water appropriated and acquired prior to the passage of the act. These provisions have been carried down through the years into the present statutes. Comp. St. 1929, secs. 46-502 to 46-506. The legislature did not intend to interfere with prior acquired rights. *Black Bros. Flour Mills v. Umphenour,* 111 Neb. 218. Our investigation does not reveal any authority to the contrary. The right to the use of water acquired prior to the enactment of the statute of 1895 was a vested property right, with which the legislature could not have interfered. *Nine Mile Irrigation District v. State,* 118 Neb. 522; *Southern Nebraska Power Co. v. Taylor,* 109 Neb. 683. The extent of the appropriation of the mill is not decided here, as it is not necessary to a decision of this case. Assuming, for the purpose of this case alone, that the mill had appropriated for its use as a manufacturing plant all the water of the Little Blue river at this point, the department of public works could grant an appropriation of water, which did not interfere with or impair the right of the mill to the use of the water. The particular appropriation of water granted the city for use in cooling its engines is such that it does not interfere with the right to the use of water acquired by the mill. The testimony is substantially in accord upon this phase of the case. It is that the water is taken from the stream, used and then returned to the stream. The department of public works may grant an appropriation which does not interfere with a previous appropriation. Section 81-6307, Comp. St. 1929, provides: "The department of public works shall make proper arrangements for the determination of

priorities of right to use the public waters of the state, and determine the same. The method of determining the priority and amount of appropriation shall be fixed by the department." It has been determined that the department of public works is an administrative department having quasi-judicial functions. *Cline v. Stock,* 71 Neb. 79; *In re Application of Babson,* 105 Neb. 317; *Dawson County Irrigation Co. v. McMullen,* 120 Neb. 245. The mill does not own the water of the stream, for it is the general rule that such water is not the subject of private ownership. A right may be acquired for its use, which will be regarded as a property right, but the right carries no specific property in the water. *Kidd v. Laird,* 15 Cal. 161. The residue, after a prior appropriation, may be appropriated by others out of the water of the same stream, if there is no interference with a prior appropriator. 27 R. C. L. 1264, sec. 173; *Johnston v. Little Horse Creek Irrigating Co.,* 13 Wyo. 208.

Considering the rights of the parties as riparian owners, the use of the water desired by the city is reasonable and is not an interference with any use which the mill desires to make of the stream as a riparian owner. The mill owns the land for some distance above its dam on both sides of the river, including the islands, except 100 feet owned by the city at its intake. Both the city and the mill are riparian owners. "A riparian's right to the use of the flow of the stream passing through or by his land is a right inseparably annexed to the soil, not as an easement or appurtenance, but as a part and parcel of the land; such right being a property right, and entitled to protection as such, the same as private property rights generally." *Crawford Co. v. Hathaway,* 67 Neb. 325. See *Meng v. Coffee,* 67 Neb. 504. But the president of the milling company testified that the city's use of the water did not interfere with the use desired by the mill. It seems, however, that both parties to this litigation are relying upon appropriations of the water to a beneficial use more than upon their rights as riparian owners. But

whether we consider the rights as between two appropriators or two riparian owners, the outstanding fact that permeates this record is that the use made of the water by the city does not interfere with or impair the use to which the mill is entitled. The conclusion then follows naturally that the city has a right to use the water in the stream for the purpose of cooling its engines as long as it returns the water to the stream practically undiminished.

The rights of the mill company to maintain its dam and to use the water of the Little Blue river are determinable under the law as it existed prior to 1895. Chapter 69, Laws 1895, did not interfere with, impair or change the rights of the appellant to the use of the water. This court held in *Culver v. Garbe,* 27 Neb. 312, that the owner of the dam had a vested right in the stream and water within the land covered by the lease, and that appellee had no right or authority to interfere with it, and would be enjoined from changing the course of the stream, constructing the dam, or diminishing appellant's reservoir or supply of water. The owner of such mill, after procuring the right to dam a stream, and cause the water to flow back upon said stream, was held to have a vested right, not only in the water, which he would have by reason of his title to the land through which it runs, and to the fall caused by his dam, but to the reservoir of water created thereby, and in this right he is entitled to protection the same as in any other. The parties involved in the foregoing situation or their successors in interest had the same controversy passed upon in a later case, *Smith v. Garbe* (1910) 86 Neb. 91. In this case the court held: "The main question involved in the case is the right of defendant to maintain a certain ditch and two dams which the undisputed evidence shows were dug and constructed within the dead water zone of plaintiff's mill-dam. The rights of the parties with regard to this question we think were fully settled by this court in *Culver v. Garbe,* 27 Neb. 312." This case approved and followed the former case and quoted the following language: "A careful examination of the evidence

and plat of the river at the point where it is proposed to construct the ditch and dams satisfies us that the proposed improvement cannot be made without endangering plaintiff's property. This being true, the law will afford relief and protection." It is clear that these cases hold that the owner of a mill-dam has a vested right to the uses of the water, which could not be impaired. In *Eidemiller Ice Co. v. Guthrie*, 42 Neb. 238, this court held: "The owner of a mill who has the right to maintain a pond or flow back the water of a stream upon the land of another and to use such water to operate his mill possesses, as to the water, the dominant right, and while not the absolute owner of ice which may form on the pond, is entitled to have it remain there during the time and when its so remaining will be, or is, useful and necessary to the legitimate exercise of his right to use the water as motive power for the mill or to successfully operate the mill; but the owner of the land, if upon a non-navigable stream, may make any use he desires of ice which forms over and above so much of the bed of the stream to which his ownership extends as does not interfere with, or injure, the rights of the mill owner." The opinion in this case cites with approval *Culver v. Garbe, supra*, with the following observation: "The rights of a mill owner in the water of the stream upon which his mill is situated and in which he has constructed a dam, and to the full and necessary supply of water, have been recognized in this court." Paraphrasing the language of these cases, with reference to the case before us, the mill, which secured its right to flow back the water of the stream and to use such water to operate its mill prior to the law of 1895, has the vested right to use all of the water as motive power for the mill, but a riparian owner **may use the water over and above so much of the bed of the stream to which his ownership extends as does not** interfere with or injure the rights of the mill owner.

But the appellant complains about the permit issued by **the department of public works for the construction by** the city of certain retards, deflectors or dams in the river.

in order to secure the use of the water to which it is entitled. The construction referred to as number 3 is a dam at the point of the city's intake. It is located on the north branch of the stream. It is constructed below the level of the water and does not retard the flow when the mill's dam is closed. In addition, it has a gate which is left open, thereby entirely obviating the possibility of its causing an interference with the flow. There is testimony in the record that, when the water in the mill-pond is so low that the dam will interfere with the flow, the water is too low anyway to run the mill. On the contrary, there is evidence that the water so retarded would run the mill a few hours. If on account of low water this situation were created, the mill company would have the undoubted right to the release of the water. But the evidence is that the city needs this dam to make available water, when the mill releases the water in the mill-pond for the purpose of cleaning. This controversy arose because the mill company let the water out of its mill-pond, which compelled the city to shut down its light and water plant.

The predecessor in title to the city, in 1887, acquired a perpetual right to remove water from the mill-pond, to which the city has succeeded. The city has been given an appropriation by the department of public works. The dam at the intake is necessary to an enjoyment of that right. It is not an interference with the right of the mill to use the water.

The deflector or dam, which it is proposed to construct at the point of the division of the two branches of the stream, presents numerous problems, many of which have been disposed of by this opinion. The appellant contends that it has a right to have the stream continue to run in its natural channel (*Flader v. Central Realty & Investment Co.*, 114 Neb. 161) and that the department of public works is without jurisdiction to change the course of a running stream. Both branches of the Little Blue river are natural courses of the running stream. *Clark v. Cedar County,* 118 Neb. 465. The north branch, having always

carried water of the stream, is as much a channel as the south. The most that could be contended is that it is proposed to change the proportion of water in the two diverging channels. In the absence of damage the appellant is not entitled to complain. But, again, the evidence establishes the fact that the north channel is filling up and that the deflector heretofore built and the proposed improvement has for its purpose the retention of the flow in the north channel without stopping the flow in the south channel. The construction approved by the department will not prevent the flow in the south channel. This is not such a case as cited by the appellant where the entire course of a stream is suddenly changed. In such a case, the riparian owner, if at all, must put the stream back in the old channel within a reasonable time. The mill suffers no damage to its right to the use of the water by the diversion of a part of the water into another channel of the stream which ultimately reaches its mill-pond, such diversion causing no damage. The gist of this decision is that, no damage resulting from the proposed improvements, the order of the department was a proper one.

The language of this opinion is clear, but in order to eliminate the possibility of a misunderstanding, this decision passes only upon the right to the use of the water in the Little Blue river. Only this is within the jurisdiction of the department of public works, and our jurisdiction upon appeal is likewise limited. Obviously, the question of damages from the flow back or the question of the acquisition of property upon which to build improvements is not determined.

AFFIRMED.