For the reasons stated in *Enterprise Irrigation District v. Willis, supra,* the trial court should have granted an injunction.

REVERSED.

ENTERPRISE IRRIGATION DISTRICT, APPELLANT, V. ROBERT H. WILLIS, CHIEF OF BUREAU OF IRRIGATION, WATER POWER & DRAINAGE, ET AL., APPELLEES.

284 N. W. 326

FILED FEBRUARY 24, 1939. No. 30438.

828

*Mothersead & York,* for appellant.

*Richard C. Hunter, Attorney General, C. G. Perry* and *William H. Wright, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is a suit for an injunction brought by the Enterprise Irrigation District against Robert H. Willis, chief of the bureau of irrigation, water power and drainage, and A. C. Tilley, state engineer. At the time the suit was commenced the defendants were threatening to close the headgates of plaintiff's irrigation canal for the alleged reason that plaintiff had received all the water to which it was entitled during the irrigation season in question. In its petition the plaintiff asked that the defendant be enjoined from preventing it from diverting all the water that could be put to a beneficial use in the growing of crops. The trial court denied an injunction and plaintiff appeals.

The record discloses that in the year 1889 the Enterprise Ditch Company made an appropriation of water from the North Platte river, in accordance with the law of appropriation then in existence, in an amount in excess of 138.90

second-feet, subject only to the common-law rule that no more water could be diverted and appropriated than could be applied to a beneficial use. Thereafter the Enterprise Ditch Company sold its irrigation works and water appropriation to the plaintiff. Subsequent to the enactment of the irrigation law of 1895, providing for the creation of a state board of irrigation and for filing of claims and adjudication of water rights, a claim for such appropriation was filed with the state board of irrigation claiming an appropriation of 138.90 second-feet of water with a priority date of March 28, 1889. On January 7, 1897, the state board of irrigation entered its order, finding, adjudging and adjudicating that said appropriation was a valid appropriation for 138.90 second-feet of water with a priority of March 28, 1889, limited only by the rule that the amount so diverted should not be in excess of the amount that could be applied to a beneficial use. No appeal was taken from this order.

The irrigation laws of 1877 and 1889, the only ones on the subject at the time of plaintiff's appropriation, place no limitations upon the quantity of water that could be appropriated, save and except that the appropriation must be for some useful or beneficial purpose and within the limits of the capacity of the diversion works. See Laws 1877, p. 168; Laws 1889, ch. 68. The irrigation law of 1895 limited for the first time the quantity of water that could be appropriated to a specific amount, the statute stating "that no allotment for irrigation shall exceed one cubic foot per second for each 70 acres of land for which said appropriation shall be made." Laws 1895, ch. 69, sec. 20. The same act also provided: "Nothing in this act contained shall be so construed as to interfere with or impair the rights to water appropriated and acquired prior to the passage of this act." Laws 1895, ch. 69, sec. 49. In 1911, the legislature placed a further limitation upon the quantity of water that could be appropriated, the statute providing "that no allotment for irrigation shall exceed one cubic foot per second of time for each seventy acres of land nor *three acre-*

*feet in the aggregate during one calendar year for each acre of land for which such appropriation shall be made."* Laws 1911, ch. 153, sec. 19. (Italics ours.) These same limitations appear in the irrigation law contained in the civil administrative code law of 1919. Laws 1919, ch. 190, p. 837. The 1919 law also provided: "Nothing in this article contained shall be so construed as to interfere with or impair the rights to water appropriated and acquired prior to the fourth day of April, 1895." Laws 1919, p. 832. The last two cited sections of the civil administrative code of 1919 remain in force and are designated as sections 81-6311 and 46-506, respectively, Comp. St. 1929. It is the contention of the defendants that the limitation of three acre-feet in the aggregate during one calendar year for each acre of land for which the appropriation shall have been made, as contained in section 81-6311, Comp. St. 1929, applies to plaintiff's appropriation and, that amount having been exceeded at the time this suit was commenced, the plaintiff was not entitled to any more water and defendants should not be enjoined from closing the headgates of plaintiff's canal. Plaintiff contends that its appropriation is a right vested as of March 28, 1889, and that the statute in question has no retroactive force and, if such retroactive construction be placed upon it, it is violative of the due process clauses of the Constitution of Nebraska and the Fourteenth Amendment to the Constitution of the United States. Defendants contend that the statute is a proper exercise of the police power of the state and is not inhibited by either the state or federal Constitutions.

That the state may supervise and control the appropriation, diversion and distribution of the public waters of the state and impose that duty upon administrative officers is settled by our former decisions. *Farmers Canal Co. v. Frank,* 72 Neb. 136, 100 N. W. 286. Statutory provisions relating to the duties of administrative officers, in so far as they require or authorize a control and regulation of the diversion and distribution of appropriated waters in accordance with adjudicated priorities, are not inimical to the provisions of

the state and federal Constitutions. As was said in *Farmers Canal Co. v. Frank*, 72 Neb. 136, 100 N. W. 286: "It is the evident purpose of the law, taken as a whole, to enforce and maintain a rigid economy in the use of the waters of the state. It has been, and is, the policy of the law in all the arid states and territories to require and enforce an economical use of the waters of the natural streams. The urgent necessities of the situation compel this policy by the very force of circumstances. One of the main objects of the system of administration of public waters prescribed throughout the arid regions is to restrain unnecessary waste, and to provide for an economic distribution of that element so necessary to the very existence of agriculture in those regions. This is also the policy of the state of Nebraska in its regulation of the use of the waters of the state, and the law should be construed so as to effect a reasonable, just and economic distribution of water for irrigation purposes. The court will take judicial notice of the fact that there are hundreds of acres within the state susceptible of irrigation to every acre which there is water enough to supply, and it is obvious that a construction of the law that will best distribute the use of the waters is to be preferred, if such construction is not inimical to any constitutional inhibitions or limitations."

The various statutory provisions for the distribution of water among different appropriators according to their respective priorities by administrative officers of the state were undoubtedly enacted in furtherance of a wise public policy to afford an economical and speedy remedy to those whose rights are wrongfully disregarded by others, as well as to prevent waste, and to avoid unseemly controversies that may occur where many persons are entitled to share in a limited supply of public water for the purposes of irrigation. Such provisions have generally been sustained as a part of the police power of the state.

That an appropriator of public water, who has complied with existing statutory requirements, obtains a vested property right has been announced by this court on many oc-

casions. *Crawford Co. v. Hathaway*, 67 Neb. 325, 93 N. W. 781; *Kearney Water & Electric Powers Co. v. Alfalfa Irrigation District*, 97 Neb. 139, 149 N. W. 363; *Nine Mile Irrigation District v. State*, 118 Neb. 522, 225 N. W. 679; *City of Fairbury v. Fairbury Mill & Elevator Co.*, 123 Neb. 588, 243 N. W. 774. This brings us to the question whether the subsequent condition imposed, limiting appropriations for irrigable lands to three acre-feet per acre for each calendar year, applies retroactively to appropriations obtained prior thereto, and, if so, is it inimical to the due process provisions of the state and federal Constitutions?

The record discloses that plaintiff had used 3.50 acre-feet of water for every acre of irrigable land in the district when the order was issued to close the headgate. Of this amount 3.03 acre-feet per irrigable acre was diverted from the North Platte river, while the balance was diverted from drainage ditches crossing plaintiff's canal. All measurements were made at the points of diversion and not at the points where water was delivered to the land. There is some evidence in the record to the effect that there was no loss by percolation, the usual losses of this character being offset by inflow. While this evidence was far from satisfactory, we are obliged to treat it as proved in view of the result at which the trial court arrived. It is also established that plaintiff had not exhausted its appropriation, assuming that the requirement as to beneficial use had been complied with and that statutory limitations as to quantity did not apply.

It is a principle of the common law that one may not divert more water, even under a valid appropriation, than he can put to a beneficial use. While many elements must be considered in determining whether water has been put to beneficial use, one is that it shall not exceed the least amount of water that experience indicates is necessary in the exercise of good husbandry for the production of crops. The extent to which landowners need and are entitled to have the benefit of irrigation water under a vested appropriation ordinarily depends upon aridity, rainfall, loca-

tion, soil porosity, adaptability to particular forms of production and the use to which the irrigable lands are put. In other words, the duty of water may be defined as such a quantity of water necessary, when economically conducted and applied to the land without unnecessary loss, as will result in the successful growing of crops. 2 Kinney, Irrigation and Water Rights (2d ed.) secs. 902 and 903.

Many persons engaged in farming within the plaintiff district testified that the water used by them had been used in the usual and ordinary way to produce crops, that there had been no waste or misapplication of the irrigation water, and that, at the time the closing of the headgate was threatened, their crops were in need of water. They also testified that a failure to obtain water would have resulted in a material decrease in the crop returns from their lands.

The defendants produced the evidence of two experts who testified that they had made many experiments as to the amount of water required to grow certain crops on various kinds of lands, including the types of land found in the plaintiff district. The conclusions of these witnesses were that three acre-feet of water was sufficient to grow the kind of crops raised on the lands within the Enterprise Irrigation district. The experiments testified to were made under conditions very dissimilar from those under which the farmers of the plaintiff district were forced to operate. Whether the difference in conditions would account for the difference in the amount of water used would require us to delve into the realms of speculation and conjecture. There is no direct evidence that the water diverted by the plaintiff district had been wasted or put to any use other than a beneficial one. The evidence also sustains the plaintiff in its contention that the crops being grown on the lands in the district were in need of water at the time of the threatened closing of the headgate in plaintiff's canal. After a consideration of all the evidence in the record on the subject, we are of the opinion that it will not sustain a finding that irrigation water was wasted or put to other than a beneficial use in the usual, ordinary and recognized

method of applying irrigation water in that section of the state.

It must be borne in mind that the quantity of water that can be diverted under a vested water right for irrigation purposes is an element of importance equal to that of its priority in determining its value. While such a right may be regulated and supervised by the state and its administrative officers for the purpose of protecting all adjudicated rights of appropriators having an interest in the waters of the stream, yet a law of this character cannot operate to divest rights already vested at the time it was enacted. While vested water rights may be interfered with within reasonable limits under the police power of the state to secure a proper regulation and supervision of them for the public good, any interference that limits the quantity of water or changes the date of its priority to the material injury of its holder is more than regulation and supervision and extends into the field generally referred to as a deprivation of a vested right.

In a similar situation the legislature of California declared that the term "useful or beneficial purposes" shall not be construed to mean the use in any one year of more than two and one-half acre-feet of water per acre in the irrigation of uncultivated areas of land not devoted to cultivated crops. It was contended that the act of the legislature was justified as a proper exercise of the police power of the state. In holding to the contrary, the supreme court of that state said: "It may be conceded that the phrase 'police power of the state' has, as to its scope and meaning been subjected to a quite severe strain of recent years in the endeavor to so expand it as to cover all sorts of legislation sought to be enacted in the asserted interest of modern progress; but we have yet to be referred to a case wherein it has been judicially so far expanded as to invest the legislative department of this state with arbitrary power to destroy vested rights in private property when such rights are being exercised and such property is being employed in the useful and in nowise harmful production of

wealth, and when such use and the product thereof cannot be said or shown to be inimical to public health or morals or to the general welfare; but, on the contrary, must be conceded to be beneficial to each and all of these. The use to which the owners of lands contiguous to a river devote its soil by the aid of the waters of such river in the annual production of crops or cattle is such a use. The extent to which such riparian landowners need, and use, and are entitled to have the benefit of the flow and overflow of such waters under their vested riparian rights therein is a matter which depends upon the circumstances of each particular case; upon location, aridity, rainfall, soil porosity, responsiveness, adaptability to particular forms of production, and many other elements which render the question essentially one for judicial inquiry and determination in all cases involving the proper use of water upon both cultivated and uncultivated areas. To concede that the state legislature has the right arbitrarily to fix as to the latter the amount of water which the riparian proprietor may take and use thereon would be to concede an equal power to make a like arbitrary fixation in respect to cultivated areas also, entirely regardless of the foregoing elements which are necessarily the determining factors in such fixation. To concede this would be to concede to the legislative department of the state government the arbitrary power to destroy vested rights in private property of every kind and character." *Herminghaus v. Southern California Edison Co.*, 200 Cal. 81, 252 Pac. 607. We are of the opinion that the principle of law set forth in the foregoing case is correct and that it has particular application to the facts in the case at bar.

The evidence, as we view it, shows that the plaintiff district has diverted more than three acre-feet of water for every irrigable acre in its district. It further shows that the water used has been applied to a beneficial use without waste. It is not disputed that additional water was required when the injunction was threatened and that plaintiff's appropriation, without the limitations complained of, was

sufficient to provide it without infringing upon the rights of prior appropriators. The evidence of the expert witnesses tendered by the defendants was not sufficient to overcome the undisputed evidence offered by the plaintiff. We recognize the value of the experiments and research conducted by experts in their respective fields, but the duty of water is a complicated question of fact which must be determined in accordance with the prevailing custom in the locality where it is used. Wiel, Water Rights (3d ed.) p. 507. Neither is it contemplated nor required that each appropriator should use the latest and most approved scientific method in applying irrigation water to the land. *Tulare Irrigation District v. Lindsay-Strathmore Irrigation District,* 3 Cal. (2d) 489, 45 Pac. (2d) 972; *Joerger v. Pacific Gas & Electric Co.,* 207 Cal. 8, 276 Pac. 1017.

We fully realize the difficulty of regulating and supervising the holder of an appropriation such as the plaintiff possesses. However, the difficulty must be overcome by regulation and control over the district by virtue of a proper exercise of the police power of the state. The difficulties of the situation cannot be advanced as a justification for violating vested property rights. The various irrigation acts of this state show an intent on the part of the legislature not to interfere with or impair appropriation rights which vested prior to the enactment of the 1895 irrigation law. Construing these acts in connection with the provision in section 81-6311, Comp. St. 1929, limiting the amount of water that could be used in a calendar year to three acre-feet for each irrigable acre, we reach the conclusion that this statutory provision was never intended to have any retroactive effect upon plaintiff's appropriation right which vested in 1889. To place any other construction upon the provision would make it inimical to applicable provisions in the state and federal Constitutions.

It is the contention of defendants that the case of *Vonburg v. Farmers Irrigation District,* 132 Neb. 12, 270 N. W. 835, is determinative of the issues involved in the case at bar. That case involved the contract rights of certain irrigators

under contracts entered into in 1890. In the opinion we said: "It is argued by defendants that plaintiffs, in any event, should be limited to three acre-feet per acre during each irrigation season. We are inclined to agree with this proposition." An examination of the record and briefs in that case shows that the limitation mentioned was not an issue in the case. It was not pleaded, briefed, nor presented to the court for determination. This court is committed to the rule that a cited case is authority only on the issues presented which were necessary to a proper decision of the case. We cannot therefore treat the *Vonburg* decision as controlling on the issues raised in the suit at bar.

We conclude that, under the facts presented to the trial court, an injunction should have been granted.

REVERSED.